# Commonwealth ex rel. Butterfield versus McCarter.

1. A., a police constable of a municipality, commissioned for a period of one year, was dismissed during his term of office by the mayor of the city for unfaithful performance of his duties. He thereupon presented a petition for a writ of quo warranto directed to said mayor to show cause why he occupied his office, alleging that though respondent had taken the oath of office customary in the municipalty he had failed to take that prescribed by Article VII. of the Constitution. *Held*, that the petitioner, having no claim to or interest in the office of mayor, and no absolute title

[Commonwealth *v.* McCarter.]

to be restored to his position in the event of the ouster of the respondent, was not entitled to the writ by virtue of the provisions of the Act of June 14th 1836, section 2, Pamph. L. 623.

2. A writ of quo warranto is not a writ of right and the courts are not bound to issue it except in the exercise of a sound discretion.

3. The facts of the present case made it perfectly manifest that a mere spirit of personal revenge was the animating cause of the application for the writ. Hence, on this account alone, such application should have have been refused.

4. Article VII. of the Constitution does not require municipal officers to take the oath of office prescribed thereby. The Act of April 18th, 1874, sect. 1, Pamph. L. 64, does require them to take such oath. It does not, however, impose any penalty of forfeiture of office for a violation of its provisions, but, on the contrary, imposes a specific penalty of fine and imprisonment. Hence, *semble*, that the respondent having taken the oath customary in the municipality, it was extremely doubtful whether there was any merit whatever in the application.

October 19th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Erie county:* Of October and November Term, 1881, No. 298.

This was a petition by the Commonwealth of Pennsylvania ex relatione Francis Healey and Richard M. Butterfield, citizens of the city of Erie, for a writ of quo warranto directed to Joseph McCarter, requiring him to show by what authority he holds and exercises the office of mayor of the city of Erie. The petitioner, Healey, afterwards, by leave of the court, withdrew from the proceeding, and Butterfield remained the sole relator. A rule was granted to show cause why the writ should not issue, and the defendant filed an answer.

The facts as set forth in the petition and answer were as follows: Butterfield was, on February 25th 1871, duly commissioned a police constable of the city of Erie, for the term of twelve months from January 31st 1871, and served as such until July 9th 1881, when he was discharged by the respondent, acting as mayor of said city. The respondent was duly elected mayor at a municipal election held the third Tuesday in February 1881, for the term commencing on the first Monday of April 1881, on which day he appeared at the Common Council room, when an oath was administered to him by his retiring predecessor in office, in the following form :

" I do swear that I will support the Constitution and laws of the United States, and of the Commonwealth of Pennsylvania, and that I will well and truly discharge my duties as mayor of the city of Erie, Pennsylvania, for the term for which I am elected, to the best of my knowledge and ability.

" JOSEPH McCARTER.

[Commonwealth v. McCarter.]

"Sworn and subscribed this 4th ·day of April, A. D. 1881.

"[L. S.]    DAVID T. JONES, Mayor."

The relator averred that said oath, not being the oath required by Art. VII., section 1, of the Constitution, and by the act of April 18th 1874 (P. L. 64), the respondent has no right ʲin law to hold and exercise the office of mayor; that the said order discharging the relator was invalid, and that the relator was entitled, under his commission, to exercise the duties and receive the emoluments of police constable during the term for which he was commissioned.

The respondent, in his affidavit, averred that at the time of taking said oath he was ignorant of the requirements of the Constitution and Act of 1874, as to the form of oath, that the oath taken by him was presented to him as the proper oath, and he believed it to be such, and that he did not intend to evade taking the legal oath. That he dismissed the relator because he was not performing his duties as they ought ·to be performed, and that such action was in pursuance of the power and authority vested in him as mayor.

The affidavit of D. T. Jones, the respondent, predecessor in office, was filed, which set forth that upon the expiration of his term and upon the inauguration of McCarter on April 4th 1881, he, Jones, administered the oath of office, taken by said McCarter, believing that it was the proper and legal oath and the only one required to be taken; that it was the same oath as had twice been administered to and taken by him, when he was inaugurated as mayor; and that there was no intent nor understanding between himself and McCarter to evade the constitutional oath.

The court entered a decree dismissing the petition and discharging the rule to show cause. GALBRAITH, P. J., filed the following opinion:

"The case for the relators rests upon the assumption, that the omission to take the oath prescribed by the law of 1874 works a forfeiture of the office in question. It is sufficient as to this that no such penalty is provided by the act, and if there were it would be indispensably requisite that there should first be a conviction before such forfeiture could be legally enforced.

"The constitution does not require municipal officers to take this oath. The term 'municipal officers' is in the Act of Assembly only. The complainants are here therefore not as attempting to enforce a right given or a duty prescribed by the Constitution, but to ask for the infliction of a penalty not mentioned in the act on which alone his complaint must rest.

"But it is not necessary to discuss this question of forfeiture. It is a sufficient and altogether fatal obstacle in the way that the

2 OUTERBRIDGE—39

relators have no such interest in the office in question as will require or justify the issuing of the writ of quo warranto on their suggestion.   It has been repeatedly held by the Supreme Court of this state that the writ of quo warranto is not demandable of right by a private relator.   The act of 1836, it is true, provides "that in the case of municipal and corporate officers the writ may be issued upon the suggestion ·of the attorney-general or his deputy in the respective county or of any person or persons desiring to prosecute the same."   But the English statute of the 9th Anne in like manner, allowed information at the relation of any person desiring to sue or prosecute, and under that statute the rule always was, as shown by all the cases, that a private relator must have an interest.   Our law, which substantially incorporates the provisions of the English statute, has been construed by our supreme court in the same way, and the words, "any person or persons desiring to prosecute the same," held to mean any person who has an interest to be affected, by which is meant an interest in the office itself and not an interest in some other office that may be indirectly affected or that has been interfered with by the removal of its incumbent, as is the alleged case here.   That the language of the act does not give a private relator the writ of quo warranto in a case of public right involving no individual grievance was ruled in the Commonwealth *v.* Allegheny Bridge Company, 8 Harris 185 ; Murphy *v.* The Farmers' Bank, 8 Harris 415 ; and Commonwealth *v.* Railroad, 8 Harris 518 ; and Judge Strong, in the case of Commonwealth *v.* Cluly, 6 P. F. S. 272, in commenting on these cases and deciding the very question here presented, said : "It is to be observed that the legislature has placed all the five classes of cases enumerated in the act on the same footing in this particular.   If a private relator cannot sue to enforce a forfeiture without having an interest, the statute gives him no greater right when he complains of the usurpation of a county or township office.   The right of a relator in each class of cases is defined by the same words."

"All the authorities show that in general the writ of quo warranto is issued at the suggestion of the attorney-general on behalf of the commonwealth, and that when the writ is allowed on the complaint of a private relator he must be shown to have an interest in the *office in question ;* as for example when one has been lawfully elected and an incumbent holds over and refuses to allow the officer elect to enter upon his duties.   In such case a quo warranto will issue on complaint of the person entitled to the office because he has a direct legal interest entitling him to legal redress.

"In the case of Commonwealth *ex rel.* Yard *v.* Meeser, 8 Wright 341, this well known rule was for once relaxed, but with

[Commonwealth v. McCarter.]

evident reluctance—Chief Justice LOWRIE, in delivering the opinion of the court, saying, " It would be a vicious rule of law that would allow all public officers to be annoyed by a quo warranto at the pleasure of every intermeddler or malicious person, and therefore we have hesitated in granting this writ at the suit of a private person. But it is quite apparent that the relator here represents a large and respectable political party and is not induced to act by mere personal motives."

" The case of Commonwealth v. Jones, 2 Jones 365, cited and relied upon by the counsel for complainants, does not sustain his position or help his case in the least. It was there held that a quo warranto directed to one holding the office of mayor of a municipal corporation might be prosecuted by a private relator, but that it would not be granted in all cases, but only in the sound discretion of the court, even when the incumbent was ineligible and the relator a citizen of the corporation. That case was in its main features almost a precise parallel with the one now under consideration.

" Without occupying further time it is sufficient to say that the relators have no such interest as would require or justify the issuing of the writ asked for by them. · This petition is therefore refused and the rule is discharged at the cost of the relators."

The relator thereupon took this writ of error, assigning for error the decision of the court that the relators have no such interest as will justify the issuing of the writ of quo warranto at their suggestion, and the decree discharging the rule and dismissing their petition.

*Henry Butterfield* (*William Benson* with. him), for the plaintiff in error.—It being admitted that the defendant was not legally sworn, the court was forced to concede that he could have been prevented from assuming the office, but the court illogically held that having assuming the office, he cannot be ousted by quo warranto. The Constitution and Act of 1874 prescribed the oath, under penalty of forfeiture of the office, and the respondent, having neglected to be properly sworn, forfeited the office *ab initio*. Commonwealth v. Walter, 2 Norris 105 ; Commonwealth v. Allen, 20 P. F. Smith 472. The relator is entitled to the writ of quo warranto as a citizen and tax-payer, as well as by reason of his title to his office of policeman, from which he had been summarily dismissed. Commonwealth v. Jones, 2 Jones 365 ; Commonwealth v. Primrose, 2 W. & S. 407 ; Commonwealth v. Cleaver, 10 Cas. 283 ; Resp. v. Wray, 3 Dall. 490 ; Id. 2 Yeates, 429 ; Commonwealth v. Dallas, 3 Yeates, 300 ; Commonwealth v. McCloskey, 2 Rawle 369.

[Commonwealth v. McCarter.]

*John P. Vincent* (*F. F. Marshall* with him), for defendant in error.—The respondent was de facto mayor, and his official acts are legal until he is lawfully ousted. The relator had no interest to entitle him to a writ of quo warranto. Commonwealth v. Cluley, 6 P. F. Smith 270; Commonwealth v. Allegheny Bridge, 8 H. 185; Commonwealth v. Jones, 2 Jones 365. The Constitution only requires the oath to be taken by "senators and representatives, and all judicial, state and county officers," under penalty of disqualification, not forfeiture. Municipal officers are not mentioned. Moreover, the penalty is only operative in case of "willful violation" "of any election law." There was no willful violation here, and the Act of 1874, as shown by its title, is not an "election law."

Mr. Justice Green delivered the opinion of the court, November 7th 1881.

Two persons, describing themselves as citizens of the city of Erie, in the county of Erie, in this state, presented their petition to the Court of Common Pleas of Erie county for a writ of quo warranto against the respondent as mayor of the city of Erie, to inquire by what authority he holds and exercises that office. Healey, one of the relators, subsequently presented a petition asking leave to withdraw from the proceeding, and Butterfield, the remaining relator, filed an amended petition setting forth that he was a police officer of the city of Erie and had been dismissed from his office by the respondent. It appears from Healey's petition to withdraw that he also was a police officer who had been dismissed; that he had no desire to join in the proceeding, and only consented to do so in consequence of the importunity of Butterfield, and upon the promise of the latter that he should incur no cost, trouble or expense by joining with him in the petition. It thus appears that the relators are mere private citizens, having no interest in the office of mayor nor any absolute title to be restored to their positions as police officers, in the event of the ouster of the respondent. A rule to show cause was granted by the court below, which was subsequently discharged at the cost of the relators, who thereupon removed the case to this court by writ of error.

We are clearly of opinion that the action of the court below in refusing the writ of quo warranto and discharging the rule to show cause, was right, and for various reasons. The remedy by quo warranto has been much considered by this court, and the circumstances in which, and the persons by whom, it may be invoked, have been clearly defined. It was long ago held in the case of Commonwealth v. Burrell, 7 Barr 34, that the writ would not lie at the suggestion of an individual against one

holding the office of judge of the Court of Common Pleas. Chief Justice GIBSON, in the course of his very exhaustive opinion, carefully indicated that the clause in the second section of the act of 1836, which authorized the issuing of the writ on the suggestion " of any person or persons desiring to prosecute the same," was not intended for the redress of a public wrong. He distinctly held that these quoted words " were judiciously added to provide, in imitation of the statute of Anne, for cases in which the public interest might not be involved, and in which the attorney-general might not be willing or bound to prosecute." On p. 39 he said : " But that there was no design to let a private citizen prosecute for a public wrong is plain from the third section, which commands the attorney-general to file the suggestion and prosecute the writ where an unchartered association shall have usurped the Commonwealth's franchise by acting as a corporation. On the usurpation of a municipal or corporate *office*, as I have said, no franchise or exclusive right of the Commonwealth is invaded ; and the intervention of a private prosecutor was extended to it, but not as a remedy for a public wrong." This case presented the question of the right of a private prosecutor to invoke the writ as against the incumbent of a public office. In the cases of Commonwealth *v.* Allegheny Bridge Co., 8 Harr. 185 ; Murphy *v.* Farmers' Bank of Schuylkill Co., 8 Harr. 415, and Commonwealth *v.* R. R. Co., 8 Harr. 518, the right of a private relator was denied, to demand the forfeiture of the franchises of a corporation. It was emphatically held that no mere private person, unless he had a private grievance to redress, could he heard on a writ of quo warranto, and in no circumstances could he be allowed to claim a forfeiture of the charter. On p. 190, LOWRIE, J., said : " We do not hear a private relator in this court claiming to forfeit a charter, and he has no right to such action in any court where he stands as a mere informer without interest."

On p. 518, LEWIS, J., said : " It has been decided in the Commonwealth *ex rel.* Murphy *v.* Farmer's Bank of Schuylkill County (see ante, 415), that a stranger who has no interest in a corporation except that which is common to every citizen, cannot demand a judgment of ouster in a writ of quo warranto. The words ' any person desiring to prosecute the same,' are in that opinion construed to mean, any person having an interest to be affected, or suffering a wrong to be redressed." . . . . " No mere stranger should be permitted to demand the forfeiture of a charter granted by the Commonwealth when the state herself does not demand it." In the case of Murphy *v.* The Bank, supra, it was held that, " In questions involving merely the *administration* of corporate functions, or duties which touch only individual rights, such as the election of officers, admission

[Commonwealth *v.* McCarter.]

of a corporate officer or member and the like, the writ may issue at the suit of the attorney-general, or any person or persons desiring to prosecute the same." It will be observed that the right of a private relator to question the election of officers, or the admission of a corporate officer, is restricted by this language, even in the case of corporations, to those instances in which individual rights are touched.

The next and more advanced step taken in the construction of the Act of 1836, was in the case of Commonwealth *v.* Cluley, 6 P. F. Smith 270. There the relator was a rival candidate for the office of sheriff in the county of Allegheny, and the object of the proceeding was to impeach the title of the incumbent and establish that of the relator. Here it would seem was a sufficient personal interest in the very subject of the controversy to warrant the procedure. But it was held, that although the relator had received 12,925 votes for the same office, being the next largest in number to the respondent, yet inasmuch as if he succeeded in ousting the respondent he would not be entitled to the office himself, he could not be heard to question the right of the respondent by quo warranto, and the writ was denied. On p. 272, STRONG, J., says: "This court has construed the words, 'any person or persons desiring to prosecute the same,' to mean any person who has an interest to be affected. They do not give a private relator the writ in a case of public right involving no individual grievance." . . . "And it is to be observed that the legislature has placed all the five classes of cases enumerated in the act on the same footing in this particular. If a private relator cannot sue out a writ to enforce a forfeiture without having an interest, the statute gives him no greater right when he complains of usurpation of a county or township office. The right of a relator in each class of cases is defined by the same words."

Of course, if the relator can show title to the office in himself he is entitled to the remedy. But here the relator does not pretend to claim the office for himself, nor that he has any interest in it. He was dismissed from service as a police officer by the respondent as mayor of the city, and apparently he seeks to punish the respondent for this act, by having him removed from his office. It is very clear the writ of quo warranto does not lie for such a person to accomplish such a purpose. It is true, perhaps, that the mayor of a city is not a county or a township officer, but he is a public officer elected by the people of the city over which he presides, and the character and functions of his office are of quite as much consequence as those of a poor-director, a road-supervisor, or any other township or county officer. He is certainly not to be regarded merely as the officer of a private corporation.

In addition to the foregoing considerations it has long been

[Commonwealth *v.* McCarter.]

held that a writ of quo warranto is not a writ of right, and the courts are not bound to issue it except in the exercise of a sound discretion. This was held before the passage of the Act of 1836 as to granting informations in the nature of writs of quo warranto in the case of Commonwealth *v.* Reigart, 14 S. & R. 216, and since the Act, in the cases of Commonwealth *v.* Cluley, 6 P. F. S. 270 and Commonwealth *v.* Jones, 2 Jones 365. In the latter case the considerations which moved the court to refuse the writ were particularly apposite to whose which exist in the present case. They are so well expressed in the opinion of C. J. Gibson, that we simply quote his very forcible language.

"What mischief then has been done in this instance by the choice of an ineligible mayor, if he be so? And who are they that come here to complain of it? They do not pretend that he does not discharge the duties of the office with integrity and ability; or that the interests of the corporation are jeoparded by an irregular or improper exercise of his functions. All the corporators but two are satisfied with him. A constituency of a hundred thousand souls are willing to dispense with a provision in the charter for their benefit. The councils, the chartered guardians of their rights, have not moved; the corporate functionaries have not moved and the unsuccessful candidate has not moved. Only two corporators demand a scrutiny; and who are they? It would be too much to say they are actuated by public spirit, or even by their own interest. They were dismissed from office, not for partisanship, but, as appears in the affidavits, for personal habits that unfitted them, and they could not expect to regain their places should the respondent be ousted. There is but one appetite to which the prosecution can be referred; and to the gratification of it a court will never lend itself. It would waste its time and the public money, did it interfere for a defect of title so unproductive of consequences."

It so happens that the facts and considerations here expressed are almost bodily applicable to the present case. The relators themselves aver their dismissal from office as policemen, and the respondent in his affidavit says this was done for improper performance of their duties. It is perfectly manifest that a mere spirit of personal revenge is the animating cause of the application for the writ; but courts do not administer their functions for the gratification of such motives, and for that reason alone we should feel it our duty to sustain the learned judge of the court below in refusing the writ.

While it is not at all necessary to the determination of the case it is well enough to add that it is extremely doubtful, to say the least, that there is any merit whatever in the application. The respondent did take the customary oath, which was regularly administered to him, as it had been to his predecessors in

office. There was certainly no refusal to take the oath prescribed by the constitution for the officers therein named. The constitution imposes a penalty of forfeiture of office for refusing to take the oath, but it only names senators, representatives, judicial, state and county officers, as the persons who are required to take it. The act of 1874, which defines the kind of election expenses that may lawfully be paid by candidates for office, does enumerate municipal officers as among those who must take the constitutional oath, but it does not impose any penalty of forfeiture of office for a violation of its provisions. On the contrary it does impose a specific penalty of fine and imprisonment for violating the act, and therefore, so far as that law is concerned, no consequence of forfeiture results from a failure to obey its directions. Hence it would seem that the constitutional provision imposing the forfeiture is inapplicable, and the Act of 1874, which includes the respondent within its enumeration, does not impose the penalty sought to be enforced.

Judgment affirmed.