## Commonwealth ex rel., Appellants, v. Morris et al.

*Beneficial associations—Fraternal societies—Corporations—Elections—Postponement of meeting—Illegal meeting—Quo warranto —Moot case.*

1. Where the grand officers of an incorporated fraternal society, who are the highest authority when the governing committee of the society is not in session, postpone with proper notice a biennial convention at which officers are elected, and cancel all arrangements for such meeting, including the lease of a hall, and no appeal is taken from such action to any tribunal inside or outside the fraternity, a convention called by a faction of the society, without notice to the members generally, and meeting in the hall originally intended for the convention, but not presided over by the officers designated for the purpose, cannot legally elect officers or transact other business.

2. An appeal by relators from a judgment against them in quo warranto proceedings may be dismissed, where the term of office, for which they claim to have been elected, has expired.

Argued January 13, 1921.  Appeal, No. 150, Jan. T., 1921, by plaintiffs, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1918, No. 3011, for defendants n. o. v., in case of Com. ex rel. John S. Noel et al. v. Edward H. Morris et al.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ.  Affirmed.

Quo warranto to determine title to corporate offices. Before FERGUSON, J.

The opinion of the Supreme Court states the facts.

At the trial the jury returned a verdict for plaintiffs. Subsequently, on motion, the court entered judgment for defendants n. o. v.

*Error assigned* was above judgment, quoting it.

*G. W. Pepper,* of *Henry, Pepper, Bodine & Stokes,* for appellants.—The meeting held at Manhattan casino was a valid meeting of delegates of the order, and the election of the relators at that meeting entitled them to hold the offices claimed.

*Abraham M. Beitler,* with him *John C. Asbury,* for appellees.—The relators had and have a remedy within the order and must pursue it.  This court is without jurisdiction: Beeman v. Supreme Lodge, 215 Pa. 627; Acri v. Bruscia, 265 Pa. 384; Robinson v. Harshaw, 63 Pa. Superior Ct. 482; Wick v. Fraternities Accident Order, 21 Pa. Superior Ct. 507; Myers v. Fritchman, 6 Pa. Superior Ct. 580; Com. ex rel. Bryan v. Pike B. Society, 8 W. & S. 247.

The question is academic: Com. ex rel. v. Mamatey, 257 Pa. 327; Reichard's License, 45 Pa. Superior Ct. 606; Com. ex rel. v. Cairns, 48 Pa. Superior Ct. 265; Faust v. Cairns, 242 Pa. 15; Winston v. Ladner, 264 Pa. 548.

OPINION BY MR. JUSTICE WALLING, February 28, 1921:

This proceeding by writ of quo warranto is to detér-mine the right to the offices of a fraternal society. The Grand United Order of Odd Fellows, a fraternal organization, had its origin in England and, in 1843, was brought to this country, where it became and is known as the Grand United Order of Odd Fellows in America, but still is a branch of the parent order. In addition to the main order which now has in America some four hundred thousand members, including a grand council and a military rank, it has a woman's and a juvenile branch. It has state and local lodges extending throughout and beyond the United States, and over all, as the highest governing body in America, is a Biennial Movable Committee, composed of a delegate from each local lodge. This committee meets in biennial convention on the second Monday of September of each even numbered year, at which a grand master, deputy grand master, grand secretary, grand treasurer and five grand directors are elected for the term of two years, beginning on the second Monday of the ensuing January. About fifteen hundred delegates usually attend the convention, which, with their friends and delegates from the affiliated bodies, make an average attendance of nearly fifteen thousand people. Each convention is held in some city and fixes the place for the next meeting; that of 1916 was held in Washington and designated New York for the 1918 convention. It is the duty of the local lodges, in the city so selected, to appoint a grand committee of arrangements to prepare for the next meeting; which was done by the New York lodges in the summer of 1917. This committee secured a lease of the Manhattan Casino on 155th Street, as the hall for the convention proper; then attempted to secure the necessary funds, some ten thousand dollars, to finance the convention. The attempt was a failure, many members of the order being in the army and all, as patriotic citizens, striving

in every possible way to help win the great world war, then at its height.

The order is an unincorporated association, but in 1886, Court of Common Pleas No. 3, of Philadelphia County, granted a charter of incorporation of the first class, under the Act of 1874, and its supplements, to the grand officers thereof, under the name of the "Sub-Committee of the Management of the Grand United Order of Odd Fellows in America," with principal place of business in Philadelphia. The by-laws of the corporation provide for regular semiannual meetings in January and July of each year, and the declared chartered purpose is, in effect, to assist in carrying on the work in all branches of the order and enforce its rules.

Near the end of the year 1917, the executive committee of the New York grand committee of arrangements communicated their difficulties, as above stated, to the Sub-Committee of Management in Philadelphia, with a request that the convention for 1918 be postponed. A like request was made by a representative of the government food department, who explained the necessity of conserving food and expenses, of keeping all men at work, of avoiding travel, etc. Thereupon the Sub-Committee of Management, at its January, 1918, meeting, voted unanimously to postpone the convention until 1920, and a proclamation to that effect was duly made and promulgated. Thereupon the grand committee in New York ratified the action of its executive committee, cancelled the lease for Manhattan Casino and ceased all effort to prepare for a convention in 1918. At this time Edward H. Morris, Esq., of Chicago, was, and for some years had been, grand master of the order, and, while the proclamation, so far as appears, was generally acquiesced in, it became rumored during the summer that certain parties unfriendly to him, headed by Mr. B. J. Davis, of Atlanta, Ga., had chosen delegates and intended to hold a convention in 1918, in spite of the announced postponement. Thereupon some delegates were elected fav-

orable to the grand master; but the proclamation was not withdrawn nor any formal notice given that a convention would be so held. Neither faction seemed to communicate to the other nor to the subordinate lodges what was being done. Four days prior to the originally appointed time for the convention, a New York lawyer, not a member of the order, made a new lease of the Manhattan Casino, apparently for the use of the Davis faction, and about the same time another building in New York known as Stovall's Hall was secured by the Morris party, but no general announcement was made of either.

It was the duty of the local committee to welcome incoming delegates at the railroad stations and conduct them to the proper hall and also to their hotels, etc. So far as appears, the only delegates so met, were those favoring the Morris faction and they were escorted to Stovall's Hall. At the appointed hour seventeen accredited delegates of the Davis faction assembled in the Casino, effected an organization, and went through the formality of electing the relators as grand officers of the order for the next two years. Later other delegates, or those claiming to be such, to the number of perhaps one hundred and fifty, entered the hall. On the same day one hundred delegates met in Stovall's Hall and voted to reëlect all of the grand officers, who are the respondents here. Under the rules of the order five delegates constitute a quorum of the Biennial Movable Committee. The trial judge submitted the case to the jury who found for the relators; thereafter the court below entered judgment for the respondents (n. o. v.) upon the whole record, whereupon the former brought this appeal.

The right of the relators to maintain this action is based upon the assumption that they have a personal interest in the offices in question, by reason of having been legally elected thereto; otherwise they have no standing: Com. ex rel. v. McCarter, 98 Pa. 607; Com. v. Cluley, 56 Pa. 270. When the Biennial Movable Committee is

not in session, the highest authority in the order is the grand officers acting as the Sub-Committee of Management. As such they issued the order postponing the 1918 convention. Right or wrong, they did it, and gave notice thereof to all the lodges; and from that order no appeal was taken to any tribunal inside or outside of the fraternity. No court of equity was asked for a mandatory injunction upon the grand officers to undo what they had done, nor was such court requested to hold the election. Therefore, the proclamation stood unchallenged with no request for its withdrawal; and during the month (May) fixed for the election of delegates, practically none were chosen. The grand committee of arrangements having authority to lease the Casino had the undoubted right to cancel the lease; and thereafter it was no more the legally designated place for the convention than any other hall. That committee was the party authorized to secure a convention hall and notify the delegates, yet not one of the Davis faction requested the committee, or sought to compel it, to perform that duty. If one unauthorized person by renting a hall can constitute it the headquarters of a great convention and by getting seventeen delegates therein transact business affecting the rights of half a million people, so can any other unauthorized person. Certainly the so-called Davis faction had no authority to secure a hall and make it the meeting place of the convention, much less to hold it there without any adequate notice to the order or the delegates. It was the right and duty of the grand master to preside at the convention and of the grand secretary to attend and prepare a roll of the delegates; yet the meeting at the Casino was without notice to either and in the absence of both. So far as appears, only one of the grand officers had any notice of such intended meeting. Under all the evidence, what took place at the Casino cannot be recognized as the convention of the Biennial Movable Committee, nor the election there held given validity.

The election held at Stovall's Hall was also invalid. The grand officers, after having solemnly proclaimed the convention postponed, could not in defiance thereof call together a hundred delegates and without any general notice procure their own reëlection. It is fair to them to say that such action seems to have been taken as an offset to what might be done by the other faction; for, in the absence of a new election, the old grand officers would continue in office.

The invalidity of the election renders a discussion of other questions unnecessary. In fact, but for the unusual character of the case, the appeal might well be dismissed on the ground that the term for which relators claim to have been elected has expired.

The judgment is affirmed at the cost of the relators.