## County of Cumberland *versus* Holcomb.

| 36 | 349 |
|----|-----|
| 29 SC | 123 |

The county is not liable to a justice of the peace, for his fees on convictions for vagrancy, unless the defendants be sentenced to hard labour, and the commitments follow the sentences as recorded.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of *assumpsit* by Michael Holcomb, Esq., a justice of the peace, against The County of Cumberland, to recover his fees in 195 cases of conviction for vagrancy, between the 21st January and the 22d April 1859, which he claimed at the rate of 87½ cents in each case.

In 77 of these cases, the justice had convicted the defendants on his own view; and it was alleged by the defence, that in these cases he had invited poor travellers, who were in no proper sense vagrants, to take up lodging in the jail, at the expense of the county, furnishing them with commitments, which they themselves presented at the jail to the sheriff. In the other cases, the parties were arrested by different officers, taken before the justice, and by him committed.

The form of the commitments, in all these cases, was as follows:—

*Cumberland County,* ss.

The Commonwealth of Pennsylvania, to Andrew Martin, constable of the borough of Carlisle, and to the keeper of the common jail of said county, Greeting:

[SEAL.] These are to command you, the said constable, forthwith to convey and deliver into the custody of the keeper of the said common jail, the body of George Henry, charged before M. Holcomb, Esquire, one of our justices of the peace in and for the said county, with vagrancy, upon the oath of Andrew Martin. And you, the said keeper, are hereby required to receive the body of the said George Henry into your custody, in the said common jail, and him there safely keep for 48 hours. Witness the said M. Holcomb, Esquire, at Carlisle aforesaid, the 21st day of January 1859.

M. HOLCOMB, Justice of the Peace.

The defendant's counsel presented the following points in

[County of Cumberland *v.* Holcomb.]

writing, upon which they requested the court to charge the jury:—

1. That, as the provisions of the act intending to "prevent the mischiefs arising from the increase of vagabonds, and other idle and disorderly persons," provides for their punishment, when legally convicted, by directing their "commitment to the county jail, *there to be kept at hard labour*, for any time not exceeding one month," committing persons so convicted to the county jail, there to be *safely kept*, is not a compliance with the law, and for any commitments made by plaintiff, as justice of the peace, otherwise than as the law directs, he is not entitled to recover.

2. That the county is only liable for costs in the following cases: When the grand jury direct the payment of costs by the county; when the traverse jury acquit, and direct the payment of costs by the county; when the traverse jury convict, and the prisoner is discharged according to law; and when the conviction is followed by capital punishment, or punishment at hard labour. As the convictions in this case are not followed by commitment to *hard labour*, and do not come within any of those cases in which the county is made liable, the plaintiff cannot recover.

3. That if the jury believe from the evidence, that there was any intention or acts on the part of the plaintiff, calculated to defeat or prevent the beneficial effect of the law, in regard to vagrants, and that for the purpose of increasing the amount of his claim against the county, he committed persons to jail as vagrants, who were merely travelling through the borough without committing any offence known to the law, he cannot recover.

4. That persons merely travelling through our borough without begging, however poor, are not vagrants within the meaning of the act; and if the plaintiff has committed such persons to the common jail of the county, merely to be *safely kept*, but without committing them to hard labour; or if he has committed poor travellers, or other persons who went to his office and obtained commitments, at their own request, for the purpose of procuring a night's lodging, and no other purpose, the plaintiff cannot recover fees in any such cases.

5. That fifty cents being the amount allowed by the fee-bill, "for hearing and determining complaints, and *all other services rendered therein*," the plaintiff cannot, under any circumstances, recover more than that amount on each conviction.

The court below (GRAHAM, P. J.) instructed the jury as follows:—

"This action is brought by M. Holcomb, Esq., a justice of the peace in the borough of Carlisle, to recover fees from the county for committing vagrants to the county jail. The bill claimed runs from the 21st January to the 22d April 1859, during which time 195 commitments were made, and the justice claims a fee of 87½

[County of Cumberland *v.* Holcomb.]

cents on each commitment. If he is entitled to recover anything from the county, the commissioners are willing to allow fifty cents on each commitment, and there is nothing in the fee-bill that would give him more. The items in the fee-bill, in Commonwealth cases, applicable to the plaintiff's claim, are, docket entry ten cents, *mittimus* twenty-five cents, administering oath three cents, recording conviction, for every ten words, one cent. No records of conviction have been exhibited, but if the record contained one hundred words, which we think would be a large estimate, it would be ten cents additional, making in all forty-eight cents. There is a further item of one cent for every ten words of information or complaint on behalf of the Commonwealth, but it does not appear that any information was made or warrant of arrest issued in any of the cases claimed. Of the 195 commitments, 77 were made on the justice's own view, and the residue in cases where defendants were brought before him by our constables and the sheriff.

" But it is said, that the commitments are not in proper form, and therefore the justice cannot recover. The counsel for the commissioners have submitted their views of the law in writing, which we will answer, and which will give you the necessary instruction upon the law applicable to this case.

" 1. We are clearly of opinion that the commitments were not in proper form. The Act of Assembly of 1767 directs justices, upon conviction of vagrants, 'to commit them to the workhouse or jail of the county, there to be kept at hard labour, during a term not exceeding thirty days.' The commitments in these cases direct the constable to convey the body of the defendant, charged before the justice with being an idle person and a vagrant, to the keeper of the county jail, and require the keeper to receive the defendant into his custody, in the said common jail, and him there safely keep for the number of days for which each defendant is committed. It omits the requirement of the act that the defendant is to be kept at hard labour. But will this omission deprive the justice of his fees for the services performed? We think not. The commitment would certainly justify the sheriff in receiving and detaining the defendant, and we see no reason why the error or omission in the commitment should deprive the justice of his legal fees, other than an error in a judgment in a civil case, afterwards reversed on a *certiorari*, or a different judgment entered upon an appeal. We answer this point in the negative.

" 2. We answer this in the negative. The Supreme Court of our state have decided, in Northampton County *v.* West, 4 *Casey* 173, and Lancaster County *v.* Brinthall, 5 *Id.* 38, that the county is liable to pay the officers' fees in cases of this kind.

" 3. If the jury believe that the plaintiff, influenced by improper motives, and for the purpose of gain, by obtaining fees from

[County of Cumberland *v.* Holcomb.]

the county, and not for the purpose of subserving the public peace, tranquillity, and security, committed persons as vagrants who were travelling through the town without committing any offence known to the law, and who would not come within the provisions of the law punishing vagrancy, in such cases he ought not to be permitted to recover fees from the county. But this ought to be satisfactorily proved. The presumption of law is, that a public officer discharges his duty honestly, until the contrary is proved.

"4. We cannot instruct you as requested in this point. The form of commitment, although erroneous, ought not to deprive the plaintiff of his fees. And there may be cases where a justice would be entirely justified in committing a poor unfortunate creature as a vagrant, at his own request. If a poor, miserable, dirty, ragged, filthy, lousy creature, whom no man could be induced, for money, to take into his house, although he might be, by feelings of sympathy and commiseration, should apply to a justice for a commitment to keep him from starvation, or freezing by exposure to the inclemencies of a cold night, no one would censure a public officer for preventing him from perishing in such a case.

" The grand criterion which ought to govern in cases of this kind is, the motive which induced the action. If a public officer is influenced by proper motives, and acts conscientiously in the discharge of his public duties, and so as in his judgment to promote the public welfare and security, and for the good of his fellow-man, he ought to be paid for his services by the public to whom those services are rendered, although he may err in his judgment. No man ought to suffer for an honest error of judgment.

" If, on the contrary, he is influenced by no such motives, but is governed in his official acts by his own interests and the love of gain, and prostitutes his office for the acquisition of money at the public expense, irrespective of the public good, then he ought not to be permitted to pervert this office from its proper functions of subserving the public welfare, to promote his private good at the public expense.

" You will apply these principles to the case before you. What were the motives which governed the plaintiff in committing the 195 vagrants, for which he claims to be paid by the county? Was he influenced by proper motives, and a conscientious discharge of his official duties? If he was, and such is the legal presumption, unless the evidence satisfies you to the contrary, he ought to be paid, although he may have erred in his judgment, and committed persons who did not come within the provisions of the act respecting vagrants.

" If, on the contrary, he committed those passing through our town, strangers and travellers, who did not come within the mean-

[County of Cumberland *v.* Holcomb.]

ing and intention of the law, and this for his own private gain, and not because he was influenced by a desire to promote the public tranquillity and safety, then he ought not to recover fees for such commitments. Of the 195 commitments, 118 were arrested and brought before him by our constables and sheriff and his deputies; for these he certainly ought to be paid. Of the 77 committed on his own view, we submit to you to determine whether he ought to be paid for all, for any, or for how many. If they were vagrants within the meaning of the act, we have said to you, the plaintiff ought to be paid. Even if they were not, but committed honestly through a mistake of judgment, still he ought to be paid. But if they were committed through improper motives, for his own private gain, and not for the public welfare, then in such cases he ought not to receive his fees from the county.

"5. The plaintiff is not entitled to more than fifty cents in each of these cases, for the reasons we have stated."

To this charge the defendant excepted; and a verdict and judgment having been rendered for the plaintiff for $62, the defendant removed the cause to this court, and here assigned for error the answers of the court below to the 1st, 2d, and 4th points presented on the trial.

*W. H. Miller*, for the plaintiff in error.—The plaintiff's commitments were not such as the law prescribes; there were no commitments to "hard labour," and therefore he did not perform the service which alone could entitle him to claim a compensation from the county: Act 21st February 1767, *Brightly's Purd.* 829; 10 *Barr* 44; 10 *Harris* 211; 17 *S. & R.* 80; 4 *Casey* 174; 7 *Id.* 222–3; 9 *Id.* 191; 7 *S. & R.* 447; 5 *Casey* 38; 1 *S. & R.* 505; 8 *Casey* 542.

*Penrose & Henderson*, for the defendant in error, cited and relied on the case of The County of Northampton *v.* West, 4 *Casey* 174.

The opinion of the court was delivered by .

Lowrie, C. J.—The verdict of the jury has exonerated the plaintiff below from the charge of unfaithfulness in the discharge of his duties to the public, and we have to consider only what legal right he has to compensation by the county for his services. The test of the county's liability is, that the convictions be of offences "punishable by imprisonment at hard labour:" 4 *Casey* 174. Now, no conviction is complete, until sentence is passed and recorded; and every sentence must express the very punishment which is to be executed on the prisoner, and the warrant of commitment must follow the sentence as recorded. No offence is

[County of Cumberland *v.* Holcomb.]

punishable by hard labour, when the sentence is not to hard labour; for no jailer can exceed the punishment defined in the sentence and commitment; this is never intrusted to him. Here there is no sentence to hard labour. The case must be punishable by law, and by the sentence, before the county can be chargeable with the costs.

This seems to us important; for here persons seem to us to have been committed as vagrants out of charity, because they were poor and houseless strangers and travellers. Surely, they cannot be committed as vagrants, and therefore not to hard labour, and therefore not at the costs of the county. If such things be done for charity, let it not be for the profit of the magistrate. The jail is not an almshouse, and jailers are not administrators of the poor funds.

We must have no open door for stealing the people's funds by this means, if we can avoid it. The county is liable only according to statute law; and there is no implied or constructive contract to pay, except where some statute makes it a duty to pay, and then the constructive promise is merely to satisfy the form of the action of *assumpsit:* 5 *Casey* 38. These views sustain the assignments of error in this case, and require a reversal of the judgment.

Judgment reversed, and a new trial awarded.