[Commonwealth *ex rel.* Attorney General *v.* Callen.]

this point also the law is against her. It was one of the admitted facts in the cause that in the year 1874 Mrs. Meloney was upon her own application to the court of Common Pleas of Allegheny county, duly declared a feme sole trader, and that the said decree stands upon the records of said court in full force and unrevoked. The second section of the Act of 4th May 1855, P. L. 430, gives to feme sole traders ample power to convey their real estate, and in order that purchasers and others may safely deal with them the 4th section provides that the certificate of the court declaring her such trader shall be conclusive evidence of her authority until revoked by the court. It is very clear therefore that Mrs. Meloney had the power to enter into a binding contract for the sale of her real estate without her husband joining therein. That he did so join can make no difference. Indeed, it is at least a question whether his curtesy in the land would pass by a conveyance to which he was not a party. See Burson's Appeal, 10 Harris 164.

We do not regard the fact that Mrs. Meloney was living with her husband at the time of the contract as of any importance. Under the Act of 1855 a person dealing with a feme sole trader has no occasion to look beyond the certificate.

We need not discuss any of the minor questions involved. The appellants have nothing to stand upon.

The decree is affirmed and the appeal dismissed at the costs of the appellants.

# Commonwealth ex rel. Attorney General *versus* Callen.

1. An alderman of the city of Allegheny, who had been duly elected and commissioned for the term of five years from the first Monday of May 1880, died on December 10th 1881, within three calendar months immediately preceding the next annual spring election : *Held,* on demurrer to quo warranto, that the vacancy was properly filled by an election of an incumbent at the next spring election, held February 21st 1882, and that the person so elected, having been commissioned by the governor, had a good title to the office.

2. Article IV, section 8, of the Constitution of 1874, does not apply to any offices which are to be filled at the February election.

October 23d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and GREEN, JJ., STERRETT, J., absent.

ERROR to the Common Pleas No. 2 of *Allegheny county :* Of October Term 1882, No. 153.

[People *ex rel.* Attorney General *v.* Callen.]

Quo warranto, by the Commonwealth ex rel. the attorney general, directed to David R. Callen to try his title to the office of alderman in the sixth ward of the city of Allegheny. The suggestion of the attorney-general set forth that upon the death of Charles W. Rado, on December 10th 1881, who was an alderman of said ward duly elected for the term of five years from the first Monday of May 1880, "a vacancy happened in the said office within three calendar months immediately preceding the next general election;" that the said David R. Callen claims to exercise the said office under color of a commission from the governor of the Commonwealth, dated March 22d 1882, issued in pursuance of an election of said Callen held on February 21st 1882, "being the general election day next succeeding the happening of said vacancy;" and that he thereby illegally usurps the said office, &c.

The said David R. Callen demurred to the writ on the ground that it did not appear by said suggestion of the attorney-general, that he was not lawfully elected alderman of said ward at the election of February 21st 1882; and averred that his said election on that date was lawful under the provisions of the Act of June 21st 1839 (Purd. Dig. 843), and the supplement thereto of March 22d 1877, (Purd. Dig. 2135).

The court, after argument, entered judgment for the defendant on the demurrer, WHITE, J., filing the following opinion:

Under the Act of Assembly of 21st June 1839, Purdon's Digest, p. 843, aldermen and justices of the peace were to be elected at the time fixed for the election of constables. By section 7, if any vacancy occurred by a refusal to accept, or by death, resignation or otherwise, the vacancy was to be filled "at the next election, and such election shall be held and conducted in the same manner as the other elections for justices under this act."

By section 1, of the Act of 6th May 1874, Purdon's Digest, p. 1889, in the case of vacancy from whatever cause, the governor was authorized to appoint some suitable person to fill the vacancy, and commission him to hold the office until thirty days after the next annual municipal or township election, "at which election his successor shall be elected."

By the Act of 22d March 1877, Purdon's Digest, p. 2135, section 1, aldermen and justices of the peace are to be elected on the third Tuesday of February, and their term of office shall begin on the first Monday of May following. Section 2 provides, that, in case of a term about expiring, or of any vacancy that may happen by death, resignation or otherwise, the constable of the ward, borough or township, shall give at least twenty days notice of an election to fill the office. And section 3 provides, that if any vacancy shall occur after the time of

[People *ex rel*. Attorney General *v*. Callen.]

the annual election, the governor shall appoint one to fill the office until the first Monday of May succeeding the next ward, or township election."

In conformity to these Acts of Assembly, the defendant was elected alderman of the sixth ward, Allegheny city, at the annual spring election, on the third Tuesday of February 1882, which was the 21st day of the month ; and was duly commissioned by the governor. He was elected to fill the vacancy occasioned by the death of Charles W. Rado, an alderman of that ward, whose term did not expire till 1885, but who died on the 10th day of December 1881. There was an interval of seventy-three days between the death of Rado, and the time of the annual election on the third Tuesday of February.

It is suggested that the election of the defendant was illegal, under section 8, Article IV of the Constitution of 1874, because the vacancy occurred within three calendar months, immediately preceding the election. And that is the question raised by the suggestion and demurrer in this case.

The section of the constitution referred to is in these words : The governor " shall nominate, and, by and with the advice and consent of two-thirds of all the members of the senate, appoint a secretary of the Commonwealth, and an attorney-general, during pleasure, a superintendent of public instruction, for four years, and such other officers of the commonwealth as he is or may be authorized by the constitution or law to appoint; he shall have power to fill all vacancies that may happen in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of their next session ; he shall have power to fill any vacancy that may happen during the recess of the senate in the office of auditor general, state treasurer, secretary of internal affairs, or superintendent of public instruction, in a judicial office, or in any other elective office which he is or may be authorized to fill ; if the vacancy shall happen during the session of the senate, the governor shall nominate to the senate, before their final adjournment, a proper person to fill said vacancy ; but in any such case of vacancy in an elective office, a person shall be chosen to said office *at the next general election*, unless the vacancy shall happen *within three calendar months* immediately preceding such election, in which case, the election for said office shall be held at the *second succeeding general election*. In acting on executive nominations the senate shall sit with open doors, and in confirming or rejecting the nominations of the governor, the vote shall be taken by yeas and nays, and shall be entered on the journal."

A casual reading of the section would seem to limit its application to such offices, where, by the constitution or law, the senate had to be consulted, and had the power of confirmation or

[People *ex rel.* Attorney General *v.* Callen.]

rejection. The particular offices named are all of that character. First. All offices to which the governor has the original power of appointment. Second. Such elective offices as are specially named, viz: auditor general, state treasurer, secretary of internal affairs, superintendent of public instruction, and a judicial office. And on a close analysis of the section this view is rather confirmed. Yet it may possibly bear a wider construction and may embrace offices, where neither the constitution nor the statute may require a confirmation by the senate. For example, I see nothing in the constitution in the way of the legislature empowering the governor to fill vacancies until the next general election, in county offices. Whether this section would require all such appointments to be confirmed by the senate, if the statute did not so provide, may be doubted. But doubtless, in all such cases the latter part of the section, which designates the time for filling the office by a new election, would apply ; for all such officers are elected at the general election in November. The section may well apply to all state and county offices. But does it apply to city, ward, borough or township offices?

"Throughout the constitution where the expression "general election" occurs, it means the November election. "The members of the General Assembly shall be chosen at the general election, every second year;" Article II, section 2. The governor "shall be chosen on the day of the general election:" Article IV, section 2. County officers shall be elected at the general elections;" Article XIV, section 2. "The general election shall be held annually on the Tuesday next following the first Monday of November:" Article VIII, section 2. And the 3rd section of Article VIII, provides, that "All elections for city, ward, borough and township officers, for regular terms of service, shall be held on the third Tuesday of February." Then section 11 of Article V, provides, that "justices of the peace and aldermen shall be elected at the time of the election of constables." If this section applies to the office of alderman, and if the election to fill a vacancy in that office shall be held at the general election, then it is in conflict with section 2 of Article V.

To meet this objection it is suggested that the word general in the section means the annual election for officers of that class. But that would be given a totally different meaning to the term "general election" in this section, from all other places where it is used in the constitution. That is not to be presumed. A constitution is generally prepared with great deliberation, and the words carefully selected. Instead of giving that forced construction to this section, it is much more fair and reasonable to suppose it was not intended to apply to any officers of an

elective character, except those who are elected at the general election.

" This view of the section is confirmed when we consider the difference in the offices to be filled at the two elections. All state and county officers are elected at the general election in November. There is great reason why, in the case of a sudden vacancy, as by death, the election should not take place until the electors have had ample time to learn of the vacancy and select a suitable successor. Three months' time in such cases is perhaps short enough. But in city, ward, borough or township offices that length of time is not necessary. The twenty days prescribed in the statute for the constable's notice of the election is sufficient.

" An alderman or justice of the peace is not properly a ward, borough or township officer, nor is the office a judicial office, strictly speaking, although the constitutional provisions on the subject are found in the article on the judiciary. We must, however, consider it as belonging to the class of ward, borough or township offices, because it is placed in that class by the constitution. And it is the only office of that class where, under existing laws, the governor has power to appoint, in case of vacancy.

" Limiting the section to the officers named in it, and such other elective officers as are to be elected at the general election in November, gives full meaning to all the words of the section, involves no inconsistency, harmonizes it with all the parts of the constitution, and meets all apparent or reasonable necessity for such a provision. From the whole tenor of the section, it seems to me, it was not intended to apply to any offices which are to be filled at the February election.

" The demurrer is therefore sustained, and judgment is entered for defendant."

The Commonwealth thereupon took this writ of error, assigning for error the entry of judgment for the defendant on the demurrer.

*W. B. Rodgers*, for the plaintiff in error.

*Henry Meyer* (with him *Montooth Bros.*), for the defendant in error.

The opinion of the court was delivered November 20th, 1882.

PER CURIAM. We affirm this judgment upon the opinion of the learned court below.

Judgment affirmed.