House, Appellant, v. Allegheny County.

Argued April 28, 1943. Before KELLER, P. J., BALD-
RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*Warren H. Van Kirk,* for appellant.

*Nathaniel K. Beck,* Assistant County Solicitor, with
him *Walter P. Smart,* County Solicitor, for appellee.

OPINION BY RENO, J., October 4, 1943:

Appellant, a justice of the peace, sued the county of
Allegheny in assumpsit to recover fees alleged to be due
under the Act of April 5, 1929, P. L. 170, §1, 42 PS
§211, which provides that "In all cases of summary con-
victions, in which the defendant is convicted and sen-
tenced to jail in default of payment of the fine and
costs imposed, the costs of prosecution shall be paid by
the county." He alleged in his original and amended
statements of claim that he had tried and imposed sen-
tences in enumerated summary proceedings in which
the defendants therein were committed to jail in default
of the payment of the fines and costs; that he presented
monthly returns thereof to the county controller who
"did promptly pay all costs legally due the plaintiff in

the said cases, except in each and every case ...... the following amounts [were not paid] : Entering judgment on conviction for fine, .75; Recording conviction, .50; Recording sentence, .50." The amount for which appellant sued is $1,527.75. Other justices sued to recover similar fees, and the court below disposed of all the cases in one opinion. It sustained the county's affidavits of defense raising questions of law and entered judgment for the county for reasons which we shall state and examine seriatim.

1. The court below held that appellant cannot sue in assumpsit. It said: "Unless some statutory provision imposes an obligation upon the defendant to pay the plaintiffs upon their claim to a right to receive the fees or otherwise gives them a right to have their claims determined and enforced by this form of action, the plaintiffs cannot avail themselves of it. We have found no such statutory provision nor has our attention been directed to any such authority." The obligation of the county to pay the costs of prosecution is plainly imposed by the Act of 1929, supra, and long ago, in a suit by a constable to recover fees from a county, the Supreme Court said: "But is it true that an action of assumpsit will not lie against a county in a case like the present? The proceedings were in the name of the Commonwealth, and although she could not be sued for costs, yet, upon the presumption, that she would act in good faith towards her citizens, *the law would imply a promise upon the part of the state to make compensation for services rendered* in its behalf. As a sovereign, the power of the state to direct the manner of paying for these services, whether they should be paid by the state treasurer for the entire state, or by each county for itself, is undoubted. The duty to pay is not only imposed by the statute, but it also arises from the benefits derived from the performance of the services, and as these services, though rendered in the name

of the Commonwealth, were really for the preservation of order and the administration of justice within the county, why may we not *imply an agreement founded upon the performance of the services and the requisitions of the statute, that the costs should be paid by the county?"* (Italics supplied): *Lancaster County v. Brinthall,* 29 Pa. 38, 39.

This principle is firmly established in the law and there are literally hundreds of cases in the books where actions in assumpsit by public officers to recover statutory fees and commissions have been maintained without question or discussion. A few typical appellate cases, picked at random, follow: *Cumberland Co. v. Holcomb,* 36 Pa. 349 (justice of the peace); *Lehigh Co. v. Schock,* 113 Pa. 373, 7 A. 52 (justice of the peace); *Northampton Co. v. Herman,* 119 Pa. 373, 13 A. 277 (sheriff); *Marshall v. Uniontown Borough School Dist.,* 262 Pa. 224, 105 A. 78 (tax collector); *McNulty v. Throop Borough School Dist.,* 299 Pa. 465, 149 A. 741 (tax collector). And there is a legion of cases in the side reports decided by the lower courts from which appeals were not taken and in which assumpsit actions to collect fees of public officers were entertained without question or discussion of the propriety of the action.

2. The court below also held that claims for fees by justices of the peace must be presented to the county controller, that his action thereon is final unless an appeal is taken, and that the remedy by appeal is the exclusive method of questioning the action of the controller.

This is based upon a consideration of The General County Law of May 2, 1929, P. L. 1278, which in §349, 16 PS §349, provides, in part: "The controller shall scrutinize, audit and decide on all bills, claims and demands whatsoever against the county. All persons having such claims, shall first present the same to the controller, and, if required, make oath or affirmation

before him to the correctness thereof ...... All claims which he shall find legally due he shall certify to the commissioners."

Appellant presented his claim to the controller who rejected it for reasons which the record does not disclose. The requirement of the statute that claims be presented to the controller was duly fulfilled and the question before us comes to this: Having presented his claim to the controller who rejected it, was appellant required to appeal from that action within the time prescribed by the statute or may he institute assumpsit?

County officers, like those of cities, boroughs and townships, are required by statute to submit their claims to controllers or auditors and, if dissatisfied with the decision of these fiscal officers, their only remedy is by an appeal to the court of common pleas. This is the doctrine of *Skelton v. Lower Merion Township,* 318 Pa. 356, 178 A. 387, and many other cases. Moreover, The General County Law, supra, §345, 16 PS §345, requires the county controller to report to the court of common pleas annually "all receipts and expenditures of the county for the preceding year, in detail, and classified as required in the preceding section of this act, together with a full statement of the financial conditions of the county." The "preceding section of the act" (§344) prescribes the manner in which the controller shall keep his books and, inter alia, provides that they shall "show distinctly and separately ...... all debts and accounts due by county officers or others." Section 379 provides that an appeal may be taken from such report to the court of common pleas, "either by the Commonwealth, the county or officer."

However, a justice of the peace is not a "county officer" within the meaning of §344 nor an "officer" contemplated by §379. Section 51 of The General County Law enumerates the county officers and does not mention justices of the peace; they are not referred

to elsewhere in the Act as county officers, nor does any provision thereof subject them to the liabilities of county officers. The Constitution (Art. XIV, §1) also enumerates county officers and justice of the peace is not among them. The justices of the peace are judicial officers; they perform no administrative duties in connection with the corporate affairs, or the management of the business concerns of the county. True, their jurisdiction extends over the county, "But mere coincidence of boundary or character of duty performed is not sufficient to make them county officers": *Tranter v. Allegheny Co. Authority*, 316 Pa. 65, 83, 173 A. 289. They are not elected by the voters of the county at large but by the voters of wards, boroughs and townships. They do, it is true, collect fines and costs and, in proper cases, remit them to the county and the county does pay them certain fees, but this does not constitute them county officers. County controllers do not, as we well know, prescribe the form in which justices of the peace shall keep their books of financial account, do not periodically check or audit their books and cast up the state of accounts between the county and them, and the annual reports of county controllers to the courts do not contain, as required by §344, supra, a statement of "debts and accounts due" by justices of the peace.[1]

---

[1] Although it is not a part of the record we have examined with interest the printed report of the controller of Allegheny County for 1939. It confirms the statement we have made, supra, concerning the general character of controllers' reports. It is a large volume of 371 pages, many of them exhibits folded double or triple. It constitutes a comprehensive and detailed statement of the receipts and expenditures of the county and, so far as we can judge, accurately portrays its financial condition. It contains the accounts of the county with the individual county officers (to wit, sheriff, recorder, prothonotary, register, court clerks, district' attorney, treasurer and coroner), showing their receipts and the payments made to them and for the maintenance of their offices. But it does not contain accounts of the county with the individual justices of the peace either by name or

The court below relied upon *Com. ex rel. v. Cameron,* 259 Pa. 209, 102 A. 879, for its conclusion that justices of the peace are county officers. But that case merely holds that under the Act of June 14, 1836, P. L. 621, §2, 12 PS §2022, the court of common pleas of the county in which a justice of the peace is elected, rather than the Supreme Court, has jurisdiction by quo warranto "In case any person shall usurp, intrude into, or unlawfully hold or exercise any county or township office within the respective county." It followed *Com. ex rel. v. Callen,* 101 Pa. 375, 379, in which it was said: "An alderman or justice of the peace is not properly a ward, borough or township officer . . . . . . We must, however, consider it as belonging to the class of ward, borough or township offices, because it is placed there by the constitution." The cases do not hold that a justice of the peace is a county officer within the meaning of The General County Law. The statute regulating the issuance of writs of quo warranto and The General County Law are not in pari materia and no rule of statutory construction requires that a meaning found to inhere in one shall also be attributed to the other. Nowhere in The General County Law is a justice of the peace mentioned as a county officer and we cannot write into the law that which the legislature has obviously and intentionally omitted.

Reference should be made to the word "audit" in §349, supra. It is the duty of the controller, in the

---

office. The receipts from them are apparently lumped in one item: "Miscellaneous, Sundry alderman and justices of the peace, fines $1,449.86." The payments to them are not separately listed and are included, so it seems to us, in the item: "Dept. Quarter Sessions, miscellaneous, $627,561.00." Upon its face the report shows that (a) justices of the peace are not regarded as county officers; (b) there is no audit of their accounts and a balance struck forming the basis of an appeal; and (c) there is no statement of claims rejected by the controller upon which an appeal might be predicated.

language of the act, to "scrutinize, *audit* and decide on all bills, claims and demands whatsoever against the county." This provision applies to all claims, whatever their nature, whether arising out of a contract, a statutory duty, or even an alleged claim for unliquidated tort damages. But "audit" in that context means only that the controller shall examine, consider and investigate the claim. It does not connote a judicial audit in the sense that the controller's decision is an adjudication which can be questioned only by a technical appeal to court. For example, a contractor whose claim has been rejected by a controller may resort either to assumpsit (*Osterling v. Allegheny Co.,* 272 Pa 458, 116 A. 385), or mandamus: *Com. ex rel. v. Tice,* 272 Pa. 447, 116 A. 316. He is not obliged to appeal. Indeed, no provision is made for an appeal from the action of the controller except by "the Commonwealth, the county or officer" (§379), and even they can appeal only from the *report* of the controller to the court of common pleas. So, a justice of the peace, whose claim for fees has been rejected by the controller, is not obliged or permitted to appeal; he may sue in assumpsit or institute mandamus. The requirement to appeal arises only when the controller has audited the books and accounts of a *county* officer and has found a balance against him.

3. Appellee argues that the only remedy available to appellant is mandamus to compel the controller to certify the claim to the commissioners. Undoubtedly, mandamus is available for that purpose, but appellant is not confined to that remedy. We have already demonstrated that assumpsit can be maintained. "Invented, as it was, for the purpose of supplying defects in justice, mandamus does not supersede legal remedies": 34 Am. Jur. §42 "Mandamus". Indeed, mandamus is available only "where there is no other adequate, specific or appropriate remedy": *Chilli v. Mc-*

*Keesport School Dist.,* 334 Pa. 581, 583, 6 A. 2d 99. Here appellant seeks a judgment against the county and assumpsit is adequate and specific, and, more, it is the only appropriate remedy for that purpose. He might have resorted to the easier and speedier remedy of mandamus against the controller, but that is his affair. He cannot be turned out of court because he prefers a money judgment against the county to· a command to the controller.

Judgment reversed with procedendo.