## Commonwealth ex rel. Schermer, Appellant, v. Franek.

## Commonwealth ex rel. Franek v. Schermer, Appellant.

342

Argued March 20, 1933.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*C. S. Schermer,* with him *Ben E. Sherman,* for appellant, cited: Com. v. Swank, 79 Pa. 154; Kerr v. Trego, 47 Pa. 292; Riddle v. County, 7 S. & R. 386.

*George Mashank* and *E. V. Buckley,* of *Service, McNeal & Buckley,* for appellee, were not heard.

OPINION BY MR. JUSTICE KEPHART, April 10, 1933:

The Borough of Farrell became the City of Farrell under the Third-Class City Act in October, 1930.

Joseph A. Franek had been elected Justice of the Peace of the Borough in January, 1930, for a term of six years. On November 3, 1931, the newly organized City held its first general municipal election for the purpose of assuming its status as a Third-Class City. Julius Schermer was elected Alderman of the second ward, and received a commission for a term of six years commencing January 6, 1932. The second ward was the same one in which Franek was a resident when commissioned Justice of the Peace. At the same general election Franek was elected Mayor of the newly constituted city. The change in organization precipitated cross actions of quo warranto. Schermer instituted his action to oust Franek from the office of Justice of the Peace and Franek re-

taliated with a similar proceeding to oust Schermer from the office of Alderman. The court below ousted Schermer from the office of Alderman and sustained Franek as Justice of the Peace. Appeals followed which will be decided in one opinion.

A writ of quo warranto to oust a public officer possesses many of the elements of a criminal prosecution. Historically, it was a criminal proceeding on information and resulted in the imposition of fines and sentences of imprisonment. While the writ soon lost its criminal character and applied to the mere purpose of trying the civil rights involved, it retained the criminal form. As a result, the action is brought in the name of the Commonwealth to redress a public wrong, is prosecuted in the name of the Commonwealth's attorney and by his leave; if the Commonwealth is successful, it results in ousting the usurper from the office which he unlawfully holds. The question, being a public one, cannot be raised by a private person, but by the attorney general or the district attorney: Com. v. Cluley, 56 Pa. 270; Com. v. Pfromm, 255 Pa. 485.

Although the present actions are brought in the name of the Commonwealth, the district attorney's name does not appear in the records. This is a defect which must not ordinarily be overlooked since the protection of public rights is involved; but as it was stated at the bar of this court that the district attorney had consented to the use of his name, although he made no formal appearance, the omission in this case is overlooked. We adopt this attitude more readily as we bear in mind that the attorney general or district attorney may not arbitrarily refuse either to bring the action or permit the use of his name by a private relator. Should he do so, the party aggrieved by his failure may, in a proper case, compel his coöperation by mandamus: People ex rel. v. Healey, 230 Ill. 280, 82 N. E. 599; Fuller v. Ellis, 98 Mich. 96, 57 N. W. 33; State ex rel. v. Berry, 3 Minn. 90; Bank of Mt. Pleasant's Case, 5 Ohio 250; State ex rel. v.

Elliott, 13 Utah 200, 44 Pac. 248. The reason for this is set forth in Lamoreaux v. Ellis, 89 Mich. 146, 50 N. W. 812: "If the attorney general and prosecuting attorney can refuse, for no good reason, to file an information of this action upon the relation of one who claims that he was legally elected to an office,......then it may happen that, if both of these officers belong to the same political party as the incumbent of the office, they would, for. that reason, refuse to move in the matter, and keep in any county office for the full term a person not legally elected or legally qualified to hold it. ...... The courts ought not to consent to any holding which will put the power arbitrarily or without remedy or redress into the hands of any one, two, or three, to prevent a candidate for office from establishing his election to any office. ......"

Although the action is prosecuted in the name of the Commonwealth, it is on the relation of a private citizen. To invoke the issuance of a writ of quo warranto the relator, therefore, must show in himself an interest in the controversy greater than that which he has merely as an inhabitant of the municipality. He must possess some peculiar, personal interest aside from his general interest as a member of the public: Com. v. Cluley, supra; Com. ex rel. v. Crow, 218 Pa. 234; Com. v. Morris, 269 Pa. 476. Has Julius Schermer such an interest? If a judgment of ouster would not place him in office, it cannot be said that he has such a right as would warrant a judgment of ouster against the official in office: Com. v. Cluley, supra; Com. ex rel. v. Crow, supra.

The Constitution of Pennsylvania, article V, section 11, provides that there shall be not more than two Justices of the Peace in each Borough. The Third-Class City Act [Act of 1874, P. L. 230, section 32] provides that there shall be but one Alderman for each ward of such a city. In the same section the act sets forth, clearly and adequately, an orderly procedure for the elimination of officers under the borough form of government

when the borough is merged or incorporated into a city: "Each of the wards of each of the said cities shall be entitled to elect one alderman, who shall have all the powers and jurisdiction of a justice of the peace, and said alderman shall be elected by the municipal election next preceding the expiration of the commission of the justice of the peace, resident in the district out of which the said ward shall be created; if two justices of the peace reside therein, then the alderman shall be the successor of the justice of the peace whose commission shall first expire, and no successor shall be elected to the one still in office, but his commission shall be and remain in full force until its expiration."

When the Borough of Farrell became the City of Farrell, Joseph Franek was a Justice of the Peace residing in the second ward, whose term did not expire until 1936. Hence, there was no vacancy to which Julius Schermer could be elected as provided in section 32 of the Third-Class City Act, supra; therefore, he has no such right or interest as would warrant a judgment of ouster.

It is contended by Schermer that inasmuch as he holds a commission from the Governor which is regular on its face, he had a prima facie right to the office which could not be defeated until a better right was shown in some other person. He declares that this right cannot be defeated on a demurrer to the pleadings. Ordinarily, this is correct: Com. v. Swank, 79 Pa. 154. However, Schermer in his petition to oust Franek from the office of Justice of the Peace sets up all the averments of fact as we have related them, and they are a sufficient ground on which this court can base its judgment. Where a petition for quo warranto sets forth sufficient facts to enter judgment, the court will properly proceed to enter it.

It is contended that the offices of Justice of the Peace and Mayor of a city are incompatible. Article XII, section 2 of the Constitution provides that the General Assembly may by law declare what offices are incompatible.

We have been pointed to no statute which declares the office of Justice of the Peace and Mayor incompatible. Inasmuch as the Constitution has provided a method of declaring what offices are incompatible, thereby announcing the public policy of this State in regard thereto, the courts are not permitted to hold offices incompatible merely because the Legislature has failed to act, even though other states may have held such offices incompatible where the duties of one conflict with those of the other. The Legislature of this Commonwealth has determined in several instances certain offices to be incompatible, and it would be a transgression of the power of this court to hold the offices of Mayor and Justice of the Peace incompatible when the Legislature has not seen fit to act in the matter.

The order sustaining the motion to quash in Appeal No. 29, and the judgment of ouster in Appeal No. 47, are affirmed, with costs in each appeal to be paid by appellant.