JOSEPH KOBYLARZ, RELATOR-APPELLEE, v. JAMES W. MERCER, CLERK OF BERGEN COUNTY, RESPONDENT, AND JOHN FRANK, JR., RESPONDENT-APPELLANT.

Argued October 20, 1942—Decided March 25, 1943.

For the appellant, *Chandless, Weller & Kramer* (*Ralph W. Chandless* and *Julius E. Kramer,* of counsel).

For the appellee, *John J. Breslin Jr.,* and *James A. Major.*

The opinion of the court was delivered by

HEHER, J. The appeal brings up for review a judgment entered in the Supreme Court on October 8th, 1942, awarding a peremptory writ of *mandamus* commanding the clerk of the County of Bergen to expunge from the ballot to be used at

the ensuing general election in the City of Garfield the name of appellant, John Frank, Jr., as a candidate for the office of mayor, conformably to a petition of nomination filed with the clerk. The writ was awarded by Mr. Justice Bodine on rule to show cause under *R. S.* 2:83-2, *et seq.;* and there was a subsequent "molding of the pleadings" in the form of an alternative writ of *mandamus,* a return thereto, a demurrer to the return and joinder in demurrer, and a rule sustaining the demurrer and allowing a peremptory writ of *mandamus.*

The inquiry is whether, at the time of the filing of the nominating petition, there was a *prima facie* vacancy in the office in question. If such was the case, it was the clerk's duty under the law to accept the petition and proceed with the election. In that event, the title to the office would be determinable in *quo warranto* after the election. It is not requisite that there be a judicial determination of a vacancy by means of this prerogative writ prior to the election. *Oliver* v. *Jersey City,* 63 *N. J. L.* 634. If there was not then a vacancy *prima facie,* it was the clerk's duty to reject the petition. As to the filling of a vacancy in an elective office of this municipality, see *Comp. Stat., pp.* 1372, 1374, §§ 2671 and 2680, as amended; saved from repeal by *R. S.* 40:107-1, 40:107-1 (17) and 40:107-1 (26). And there is also a general provision that, with certain exceptions not here pertinent, a vacancy occurring in a public office shall be filled at the next succeeding general election, unless it happens within twenty-five days next preceding such election, in which case it shall be filled at the second succeeding general election. *R. S.* 19:3–29. These provisions are the negation of a legislative intent to make a judicial declaration of forfeiture in *quo warranto* the *sine qua non* to the holding of an election to fill the vacancy.

The alternative writ reveals that at the general election held in November, 1941, one John M. Gabriel was duly elected mayor of Garfield for the term of two years commencing January 1st, 1942; that he qualified as required by law, "and has not resigned the said office and is still in possession" of it; and that appellant had in due season filed a petition with the clerk of the County of Bergen, "asking that his name be

placed on the ballot for the general election to be held in November, 1942, as a candidate for the office of mayor."

The return concedes the election and qualification of Gabriel as mayor, but alleges, *inter alia,* that "he vacated his said office and disqualified himself by accepting on January 23d, 1942, a commission as a lieutenant in the Army and by being assigned to active service in said Army as such lieutenant at Fort Eustis, Virginia, where he has continued to be and serve from that time up to the present time, thereby resulting in a vacancy in" the municipal office, in that he "was unable to serve as mayor * * * and disqualified himself from further holding" the office "through his acceptance of an incompatible office so that by law it was required that the office of mayor be filled by an acting mayor until the next general election at which time a successor was required to be elected for the unexpired term."

Thus, there is invoked the common law rule that one cannot hold two incompatible offices at the same time, and that acceptance of the second of such offices *ipso facto* constitutes a vacation of the first. *State* v. *Parkhurst,* 9 *N. J. L.* 427; *State, ex rel. Clawson* v. *Thompson,* 20 *Id.* 689; *Oliver* v. *Jersey City,* 63 *Id.* 96; *affirmed, Id.* 634; *Lofland* v. *Hilton,* 80 *Id.* 528; *In re Opinion of the Justices,* 307 *Mass.* 613; 29 *N. E. Rep.* (2d) 738; *People, ex rel. Ryan* v. *Green,* 58 *N. Y.* 295; *Stubbs* v. *Lee,* 64 *Me.* 195; *State* v. *Brown,* 5 *R. I.* 1; *Haymaker* v. *State, ex rel. McCain,* 22 *N. M.* 400; 163 *Pac. Rep.* 248; *L. R. A.* 1917D, 210. Concededly, the acceptance of the military commission did not work a forfeiture of the civil office in virtue of a constitutional or statutory provision. *Vide State Constitution, Article IV, section V; R. S.* 19:3–5. Of this, more hereafter.

For the resolution of the question, we must needs have recourse to the reason and spirit of the common law rule against the holding of incompatible offices. Dual officeholding, as such, is not forbidden by the common law. Incompatibility is an essential ingredient of the doctrine. The principle is grounded in public policy. It has reference to inconsistency of nature, duty, or function which, from considerations of sound policy, cannot be lodged in one and the

same functionary at one and the same time, rather than mere physical inability to render a personal discharge of the obligations of both offices. *State, ex rel. Clawson* v. *Thompson, supra; Howard* v. *Harrington,* 114 *Me.* 443; 96 *Atl. Rep.* 769; *Bryan* v. *Cattell,* 15 *Iowa* 538; 46 *C. J.* 941; 42 *Am. Jur.* 926, 935, *et seq.* One may not, because of the hazard of injury to the public service, contemporaneously function in two official capacities involving conflicting duties, albeit the conflict arises on but rare occasions. Controlled by this principle, the question of incompatibility of necessity depends upon the circumstances of the individual case.

And it is elementary that public office may not be vacated by judicial decree unless the disqualification be clear and imperative. It is not of the judicial function to lay down the grounds of forfeiture. Subject to constitutional limitations, such is essentially a legislative exercise; and the judicial authority is bound in this regard by the common law as modified by the lawmaking body. It is the province of that branch of the government to formulate the policy. When it has remained silent on the subject, and only then, the courts are at liberty to declare a policy compatible with the spirit of our laws and institutions and the general good and welfare, unless restrained by fundamental principles of the common law consistent with our Constitution. By article X, paragraph 1, of the Constitution of 1844, it was provided that the common law and statute laws then in force, "not repugnant to" the Constitution, should remain in force until "they expire by their own limitation, or be altered or repealed by the legislature." *Vide Scudder* v. *Trenton Falls Co.,* 1 *N. J. Eq.* 694; *State* v. *Norton,* 23 *N. J. L.* 33; *Hetfield* v. *Central Railroad Co.,* 29 *Id.* 571; *Carpenter* v. *Cornish,* 83 *Id.* 254; *affirmed, Id.* 696; *Stemmer* v. *Kline,* 128 *Id.* 455. And the disabilities prescribed by the law are to be strictly interpreted and applied in favor of eligibility. 42 *Am. Jur.* 928, 934.

The legislature has made an enumeration of offices considered incompatible. *R. S.* 19:3–5, *supra.* The act is not embracive of the offices here involved. The acceptance of the second of such offices is "deemed to make vacant" the prior elective or appointive office; but the officer "shall not be per-

mitted to qualify or take such new office until he shall have formally relinquished the office which he may have been holding." *R. S.* 19 :3–25.

It would seem that the maxim *"expressio unius est exclusio alterius"* is not apposite. This aphorism is in aid of the legislative intent, and is not a formula to be arbitrarily applied. But however that may be, the circumstances here do not present incompatibility of function within the intendment of the common law rule. So far as the pleadings disclose, Gabriel joined the armed forces merely for the duration of the war; and it would be plainly distortive of the doctrine of incompatibility to hold that his temporary enlistment in the military for service during the war emergency served to terminate his tenure to the civil office. His military service is necessarily indefinite. It may be for but a brief period, or it may extend beyond the term of his civil office, but the design was to render the service owing by every citizen to his government in time of national need; and such is not within the spirit of the common law rule of incompatibility. There can be no distinction in this behalf between those who volunteer for service during the war and those whose services are conscripted. Certainly, the principle would not apply to citizens of the latter class, for it proceeds upon the irrefutable hypothesis that the volunteer's acceptance of the second office constitutes a surrender of the first. The act of acceptance conclusively implies an intentional relinquishment of the first post.

Military service in the current emergency is a universal responsibility. The citizen's obligation to render such service when the exigency arises is fundamental in the Constitution. It is an absolute reciprocal duty of the citizen to his government. *Arver* v. *United States,* 245 *U. S.* 366; 38 *S. Ct.* 159; 62 *L. Ed.* 349; *United States* v. *Macintosh,* 283 *U. S.* 605; 51 *S. Ct.* 570; 75 *L. Ed.* 1302. Originally, the term "militia" comprised "all males physically capable of acting in concert for the common defense." A "militia" and a "standing army" were different conceptions of military force. *United States* v. *Miller,* 307 *U. S.* 174; 59 *S. Ct.* 816; 83 *L. Ed.* 1206. The early settlers subscribed to the principle

that all men "joined in some measure," in the words of Adam Smith, "the trade of a soldier to whatever other trade or profession they happened to carry on." *III Dict. Am. Hist., Militia,* 403. This is basic to the compact that brought men together into civil society for their common protection. The principle of the statutes for the mobilization of the nation's man-power to meet the menace of war is selective and compulsory. Each citizen is under a duty to serve in the capacity for which he is best suited, according to the judgment of those entrusted with the supreme responsibility of national defense. The Congress has laid it down that "the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system of selective compulsory military training and service." 50 *U. S. C. A.,* §§ 301, *et seq.,* 351, *et seq.*

The distinction between members of the regular army in permanent service, sometimes termed "professional soldiery," and the temporary service of the citizen-soldier in time of war is generally recognized. In *McCoy* v. *Board of Supervisors of Los Angeles County,* 18 *Cal.* (*2d*) 193; 114 *Pac. Rep.* (*2d*) 569, the Supreme Court of California considered a section of the State Constitution providing that a person "holding any lucrative office under the United States, or any other power," should not be eligible to a state "civil office of profit." There, a major in the Marine Corps Reserve, a component of the United States Marine Corps, available for active duty, who was also the holder of a civil office of profit under the state, entered active service at the command of the Secretary of the Navy "for a twelve months' period of training and duty with the United States Marine Corps;" and, in applying the pertinent principles, the court declared: "It was never the intent or purpose" of that constitutional provision "to discourage public employees from rendering military or naval service, to deter them from answering, or induce them to evade such a call, or to tend to impede the federal government in its effort to mobilize the citizenry, or interfere with efforts to meet a major emergency. The constitutional provision can neither be construed nor applied to effect such a result. Its primary object, as declared in the early case of *People* v.

*Leonard,* 73 *Cal.* 230; 14 *Pac. Rep.* 853, 854, is to prohibit a conjunction of a federal and a state office of profit in the same person, without any condition whatever; that is to prevent 'dual office-holding by one person' under two separate and distinct governments, and the separation of the allegiance justly due one by its officers from that due to another power.' The reason for the prohibition ceases and the constitutional provision is inapplicable in a case where the duties, compensation and rights of the holder of a state office, and his opportunity to exert any influence therein, are suspended and inchoate while he is rendering temporary patriotic service to his country under a military or naval commission." Like constitutional provisions have been given the same interpretation. *State* v. *Joseph,* 143 *La.* 428; 78 *So. Rep.* 663; *State* v. *Grayston,* 349 *Mo.* 700; 163 *S. W. Rep.* (2d) 335; *Kennedy* v. *Cook;* 285 *Ky.* 9; 146 *S. W. Rep.* (2d) 56; 132 *A. L. R.* 251. See, also, *City of Lynchburg* v. *Suttenfield,* 177 *Va.* 212; 13 *S. E. Rep.* (2d) 323; *Bryan* v. *Cattell, supra.* For a different construction, see *Fekete* v. *East St. Louis,* 315 *Ill.* 58; 145 *N. E. Rep.* 692; 40 *A. L. R.* 650; *Commonwealth* v. *Smith,* 343 *Pa.* 446; 23 *Atl. Rep.* (2d) 440.

The denial of incompatibility in the circumstances here presented is in consonance with our legislative policy so far as it has found expression. The state may ordain, in the exercise of its sovereign power, that induction into the nation's armed service in time of war shall constitute a vacation of a civil office held by the inductee, if it conceives that the essential public interest would be served thereby. The state must also function in time of war. The policy is the state's to determine. But there is no intimation of a legislative sense of incompatibility in our statute law; rather the contrary. The legislature has recognized the paramountcy of the citizen's obligation to perform military service in times of national peril. There is provision for the granting of a "leave of absence, * * * with or without pay as provided by law," to all persons holding a civil office, position or employment "other than for a fixed term or period," who shall enter "the active military or naval service of the United States or of this state, in time of war or an emergency, or

for or during any period of training, or pursuant to or in connection with the operation of any system of selective service * * *." *Chapter* 119 *of the Laws of* 1941; *N. J. S. A.* 38:23-4. The design to make this act utterly exclusive is not evident. There is no implication of a different policy as respects the mayors or municipalities having a population in excess of 12,000 (the City of Garfield is of this class), for the legislature has ordained that "whenever there shall be a vacancy in the office of mayor, or whenever the mayor shall be prevented by absence from the city, sickness or any other cause from performing the duties of the office, then the chairman of the city council shall act as mayor *pro tempore,* and he shall possess all the rights and powers of the mayor, until such disability be removed, or a new mayor be elected." *Comp. Stat., p.* 1374, § 2680; saved from repeal by *R. S.* 40:107–1. As to the effect of this saving clause, see *R. S.* 1:1–21. The legislative policy thus enunciated is that the absence of the mayor for good and sufficient cause shall not be deemed a surrender or forfeiture of his office.

Where the absence of the incumbent of a civil office for the rendition of military service would prejudice the public interest through failure of legislative provision for a substitute performance of the duties of the office, there would be presented a different question which we are not now called upon to consider. Suffice it to say that reasons of public policy do not demand the vacation of the particular office, since the legislature has vested in another the discharge of all the mayoral functions during the interim. The incumbent's disabling illness, no matter how protracted, would not constitute a vacation of the office; and there is still less reason for holding that such is the consequence of disability attending military service when the security of the nation is endangered. In such circumstances, the status of the mayor is that of a civil officer on temporary leave of absence—whether with or without pay, there is no occasion to decide.

This philosophy is implicit in chapter 231 of the laws of 1942, providing that whenever a member of the governing body of a municipality "is in the active military or naval service of the United States or of this state and shall fail to

attend any meeting of the governing body, the said governing body, at any such meeting, may adopt any ordinance or resolution which by law requires a vote measured by all the members of said governing body, by a vote measured by the members of said governing body, excluding from the number of members" the member thus absent in service "and who fails to attend such meeting." The act remains in force "only so long as" the nation "continues in the present wars with the governments of Japan, Germany and Italy, or any of them, and until the making of a treaty or treaties of peace concluding all of said wars." *Pamph. L., p.* 632; *N. J. S. A.* 40:49-27.1, 40:49-27.2. A statute often speaks as plainly by inference, and by means of the purpose that underlies it, as in any other manner. *Brandon* v. *Montclair,* 124 *N. J. L.* 135; *affirmed,* 125 *Id.* 367. A policy that is clearly implied is as effective as that which is expressed.

The policy of the law is not unduly to increase the burdens and disabilities incident to the discharge of the obligation of military service inherent in citizenship. The strongest grounds of public policy dictate that when the national security is periled by war the citizen's performance of this imperative duty should be stimulated and encouraged. The legislative history reveals a recognition of this principle. The civil rights and privileges of a public officer who joins the armed forces in the emergency of war are to be secured so far as is practicable and consistent with the common interest. Meanwhile, if he was the holder of a civil office at the time of his induction, his right to exercise its powers and functions is suspended, but the office itself is not thereby vacated. His occupancy merely is terminated, subject to restoration upon the conclusion of the emergent military service and his resumption of civil life. A civil officer on leave of absence may, under certain circumstances, be considered as "not actually holding an office but * * * merely retaining the right to reoccupy" it "at the termination of his period of leave." *McCoy* v. *Board of Supervisors of Los Angeles County, supra.*

Such is the legislatively established state policy. And we find no conflicting and overriding federal policy. Section 1222 of the Revised Statutes of the United States (10 *U. S.*

*C. A.*, § 576), invoked by appellant, is not conclusive of the issue. It provides that "No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated."

It would seem that this provision is not in terms applicable to a state or municipal officer on leave of absence for service in the army during the war, where under state law his occupancy of the civil office is suspended during the period of the exigency. But however this may be, the statute manifestly does not operate to vacate the civil office in the case at hand. Such an interdiction upon a state officer in the national interest must be distinct and peremptory. Nor is it the province of this court to enforce the federal policy thus laid down; it is not our function to determine Gabriel's status as an officer of the Army under that section.

Let the judgment be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Case, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, JJ. 13.

*For reversal*—None.