Commonwealth ex rel. Adams *v.* Holleran, Appellant.

Argued October 2, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*Roy T. Clunk,* for appellant.

*Louis Vaira,* with him *Kenneth E. Rennekamp,* for appellee.

OPINION BY MR. JUSTICE DREW, October 31, 1944.

This case raises a question which as yet has not been answered in this Commonwealth. It is: Was a vacancy created in the board of township commissioners of a first-class township by the induction of a duly elected commissioner into the military service of the United States as a seaman? The learned court below answered in the negative.

The facts which gave rise to the question are these: Arthur Lubic, plaintiff, was duly elected a commissioner of the Seventh District of Stowe Township, Allegheny County, Pennsylvania, at a regular election held November 2, 1943. He was elected for a term of four years at an annual salary of $400.00. He took office at the regular reorganization meeting of the township held January 3, 1944, and attended the meetings until he was inducted into the military service of the United States on January 17, 1944. He was drafted and entered the Navy, where he now serves as a seaman second class. On February 7, 1944, at a special meeting of the Board of Commissioners of Stowe Township, a vacancy was declared in the office of commissioner representing the Seventh District, and Joseph Holleran, defendant, was appointed commissioner to fill the place to which Lubic

had been elected. Lubic did not resign his office, nor was his resignation requested. He brought this quo warranto proceeding to settle the title to the office. The learned court below ruled that no vacancy was created by his induction into the Navy, and entered an order ousting Holleran and reinstating Lubic. Holleran appealed.

The Constitution of Pennsylvania, Article XII, Sec. 2, provides as follows: "No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached."

The Constitution further provides that the General Assembly may declare that offices are incompatible. The legislature has acted upon this provision by the Act of May 15, 1874, P. L. 186, as amended by the Act of July 2, 1941, P. L. 231, but an examination of those statutes will show that that legislation is not helpful here.

The learned court below drew a distinction between a commissioned and non-commissioned member of the armed forces, taking the position that an office of trust or profit under the United States, as defined in the Pennsylvania Constitution, applies only to commissioned officers. That the prohibition does apply to commissioned officers there can be no doubt. In *Com. ex rel. Crow v. Smith,* 343 Pa. 446, 23 A. 2d 440, this Court held that a major in the United States Army holds and exercises an office of profit or trust under the United States within the meaning of the Constitution. We there held that such officer could not continue to serve as Mayor of Uniontown. There is no close analogy between that case and the instant case, because here we have to do with a non-commissioned member of the armed forces. The decision here will determine whether there is a line of demarcation between the two—the commissioned officer and the non-commissioned soldier in the meaning and intendment of the Constitution. This

is determined by a proper interpretation of the word "office" as used in the Constitution.

Bouvier's Law Dictionary (Rawle's Third Revision) defines office as "A right to exercise a public function or employment, and to take the fees and emoluments belonging to it." Webster's New International Dictionary, 2d ed., unabridged, says: office means, "A special duty, trust, charge, or position, conferred by an exercise of governmental authority and for a public purpose." In 22 R. C. L., §2, p. 372, office is referred to as "the right to exercise a public or private employment, and to take the fees or emoluments thereunto belonging . . . everyone who is appointed to discharge a public duty, and who receives a compensation in whatever shape, is a public officer." From a reading of the cases it seems that no one definition of office can be relied upon for all purposes and occasions, but that when the elements of trust, honor, and compensation combine with definite duties and responsibilities it is generally agreed the position is an office. Clearly this is the meaning of the word as used in the Pennsylvania Constitution.

It will be admitted by all that a member of the armed services of the United States, regardless of rank, performs a vital public duty, is a necessary and integral part of the military establishment of the country, and that he holds a position of special trust and honor and receives compensation therefor. It seems conclusive that such person is holding an "office or appointment of trust or profit under the United States" in the meaning of the Constitution. The special duty, the trust conferred and the compensation paid, in the exercise of governmental authority for a public purpose, all bring the position within the language of the Constitution, and the best dictionary references as to what constitutes an office.

We have not been directed to any case, nor have we found one, which has passed upon the question posed here. There are two cases which touch upon the subject.

In *State ex rel. Cooper v. Roth,* 140 Ohio 377, 44 N. E. 2d 456, it was held that a city councilman's induction into the armed forces worked an automatic forfeiture of his civilian office, under a statute that prohibited the holding of any "other office or employment." That case distinguishes between "office" and "employment" but the guiding principles and purposes are the same as in the instant case. In the Constitution of this Commonwealth there is no such distinction but it seems clear that had the framers intended to make this distinction they would have done so. The very absence of it is indicative that "office" here is an all-inclusive term. And in *Frazier v. Elmore* (Tenn.), 173 S. W. 2d 563, 565-6, it was said: "Whatever may be the post or station in the military service of the United States which complainant is occupying, he is in a place of trust and honor and is receiving compensation therefrom. And if not technically holding another 'office', within the letter of the prohibition, he is certainly within its spirit . . . even if a private, he is within the prohibition."

We see no reason why there should be a line of demarcation between a commissioned and a non-commissioned member of our armed forces. We think the constitutional prohibition was intended to apply with the same force and equality to both. It was the intention of the makers of the Constitution to promote, as far as possible, a sound public policy. And certainly it is in the public interest to require that an elected or appointed officer be confined to the performance of the duties of his office, and prevented from leaving it without resigning to take office or employment elsewhere. In good public service a man cannot serve two masters or perform the duties of different offices—one in the State and the other in the United States, maybe under our flag in the Philippines. It is manifest that absurdities and chaos might result if it were otherwise. Civil government must be maintained. It is possible that a majority, or even the whole membership, of the Board

of Commissioners of Stowe Township could have been drafted into the armed service of the United States and sent abroad for the duration of World War II. If this happened, and the places were not filled, civil government in that township would cease to exist and for an indefinite time. Carried to the extreme, such a condition, happening in many places, could result in the breakdown of civil government generally.

It is absurd to say that some high official in the public life of Pennsylvania can leave his office and duties, enlist as a private soldier, go away to war, and retain his office and salary, but that if he enters the service as a commissioned officer and does the very same thing he cannot retain his civil office and salary. One-half of this situation was resolved by our decision in *Com. ex. rel. Crow v. Smith,* supra, and the other one-half is now resolved by our decision in this case. There is no separation or distinction, the constitutional prohibition applies alike to all persons in our armed forces, whether commissioned or not.

At the time of his ouster from the office of township commissioner, Lubic was holding two incompatible offices. It is clear that he could not serve his country in the Navy and perform the duties of township commissioner at the same time. For his naval duties would not only require him to be absent from the township, but in all probability from the country itself. Since he has no choice as to the continuance of his naval duties, his civil office must be declared vacant, as of the time of his induction. The reason that one cannot hold two incompatible offices is one of public policy, with the view of attaining the best possible government.

Since each person in the armed forces of the United States holds an office which would bring him within the prohibition of Article XII, Sec. 2, of the Pennsylvania Constitution, it follows that upon Lubic's induction into the Navy his office of township commissioner was automatically vacated. The board then under authority con-

ferred in the Township Code, Act of June 24, 1931, P. L. 1206, Sec. 530, as amended by the Act of June 9, 1941, P. L. 99, Sec. 1, had a perfect right to appoint his successor, and it did so.

Holleran is the legal representative of the Seventh District of Stowe Township on the board of township commissioners.

Order reversed.