## In re Monroe County Auditors' Report

*James C. Scanlon*, for petitioner.
*Elmer D. Christine*, for respondent.

LITTLE, J., May 1, 1951.—The county auditors in their report for the year of 1949, filed April 3, 1950, reported under the heading "General Fund", subheadings, "Disbursements", "Administrative", and "Judicial" the following items:

"Sheriff

"Salary of Sheriff ................. $3,436.94"

"Salaries of Deputies and Clerks . . $5,309.50". Under the subheading "County Jail" there appeared an item of $197.70 for painting and in the subheading "Judicial" there was an item under the heading "Sheriff": "Other expenses...... $236.20." Later in the report under a subheading F, the heading "General Fund," there appears the following "County Jail."

"Other expenses ...................$ 40.02."

Amzi F. Altemose, High Sheriff of Monroe County, filed an appeal to the Court of Common Pleas on June 2, 1950. On that date appellant filed his specifications of errors in which he alleged (a) The auditors erred in allowing credit for the payment of $3,436.94 as salary to the sheriff since the law restricted the salary to $3,300.00; (b) the auditors erred in allowing the amount of $5,309.50 for salaries of deputies and clerks since the item included the sum of $457.70 paid to Willard Quick, a member of the Board of County Commissioners as Deputy Sheriff of Monroe County. That no salary board met and adopted or passed on said salary; (c) that the auditors erred in allowing the sum of $197.70 for painting at the jail since no painting was done in or about the jail in the year 1949; (d) that the auditors erred in allowing under the heading of "Sheriff" the amount of $236.20 "for other expenses" the designation being too vague and uncertain; (e) that the auditors erred in allowing the sum of $40.02 under the subheading "County Jail" when referring to the general fund. This item he alleges is too vague and uncertain.

On July 10, 1950, Willard Quick, a member of the board of county commissioners, filed a petition for rule to show cause why the appeal should not be stricken off alleging, inter alia, that appellant was not an officer who may take an appeal from an auditors' report within the meaning of the law. Rule was granted July 18, 1950. The matter was duly argued by counsel on February 13th, 1951, and is now before the court.

### Question Involved

Is Amzi F. Altemose, appellant, an officer who may take an appeal from the county auditors' report under the terms of the Act of May 2, 1929, P. L. 1278, art. IV, sec. 379, 16 PS §379?

*Discussion*

The duties of county auditors are very clearly defined by the legislature in the Act of July 28, 1941, P. L. 541, sec. 1 and the Act of June 12, 1931, P. L. 401. Section 1 of the Act of 1941, supra, provides as follows:

"The Auditors shall audit, settle, and adjust the accounts of all county officers of the county, and make report thereof annually to the Court of Common Pleas of such County in detail, showing distinctly and separately all receipts and expenditures of the several offices and all debts and accounts due, and amount raised from each source of revenue, and the expenditures in detail and classified by reference to the objects thereof, together with a full statement of the financial conditions of the county and a statement of the balance due from or to such county officers."

It thus appears that the legislature intended the auditors' report to accurately reflect the expenditures made in each office not only in detail but classified by reference to the objects thereof. This sound requirement first appears in the Act of 1941, supra. In requiring that the expenditures be listed in detail and classified by reference to the objects thereof the legislature has put an end to the listing of expenditures as "incidental," "other expenditures" or like denominations describing the spending of public moneys.

Practically speaking, since the enaction of this statute the public now, without exception, is entitled to know the exact purpose for which public funds were expended.

The item "Other expenses.......$236.20." reported under the general fund subheading "Judicial", when reporting expenditures by virtue of the sheriff's office, fails to supply the information required by the above-recited statute. Such an item describes nothing and

is too vague and lacking in information to even remotely approach the statutory requirement.

The fifth exception recites another item announced in the report as "other expenses. . . . . . $40.02" under the county jail expense of $197.70 for painting, which ditures from the general fund. This item also fails to comply with the provisions of the statute.

The report states "Salary of Sheriff. . . . . $3436.94" whereas the statute, in counties of that class, provides for a salary of $3,300; see Act of 1947, P. L. 938, sec. 1 which anent the office of sheriff is as follows:

"In Counties of the Seventh class the annual salary of the Sheriff shall be three thousand, three hundred dollars ($3300)". This act repealed all inconsistent acts, the salary having previously been $3,000, under the terms of the Act of 1933, P. L. 14, §1.

Appellant further complains of an item charged to the county jail expense of $197.70 for painting, which he states is unwarranted since no painting whatever was done in or about the county jail during the year of 1949. It goes without question that this exception should be investigated as well as the other two "Other Expenses of the Sheriff $236.20" and "Other Expenses at the County Jail of $40.02."

Appellant questions the legality of the allowance of $457.50 to Willard Quick, present petitioner, for services as deputy sheriff while the coroner of the county was occupying the sheriff's office, on the ground, that as he was then a county commissioner and was receiving a salary in that capacity he could not receive additional salary as deputy sheriff.

Appellant further states that the Salary Board of Monroe County did not meet and approve a salary for the latter office.

We are unable to learn whether petitioner served as chief deputy under the provisions of the Act of June 25, 1947, P. L. 1308, sec. 6, or a deputy of the

class provided by the Act of June 24, 1937, P. L. 1595, sec. 1—in either event the salary or compensation of such chief deputy or other deputy shall be fixed by the salary board; Act of July 5, 1947, P. L. 1308.

Had the salary board acted, petitioner, by virtue of his office as county commissioner, would have designated his salary as deputy sheriff—but since the salary board did not act this petitioner actually and without authority, passed upon his own salary as deputy sheriff, accepted the salary, and settled his own salary account as deputy sheriff. From the pleadings before us we are unable to discover whether he was duly appointed by the coroner when he was acting in the capacity of county sheriff under the terms of the Act of June 29, 1923, P. L. 944, or whether as commissioner, or member of the salary board, petitioner made his own appointment and assumed the duties of the second office. In either event were this procedure countenanced, the three county commissioners, while receiving compensation as such officers, could occupy the offices of deputy in three other county offices, thereby augmenting their compensation from public funds and, by nominating their salaries for such positions as salary board, receive such compensation as they chose to pay themselves for such services. Should the county auditors fail to surcharge or protect the pecuniary interests of the public, grave injustice might result.

Under the common law there is a great diversity of opinion on the subject of incompatibility of offices; for a lengthy and helpful discussion of common-law incompatibility see 22 R. C. L. 412 et seq., and L. R. A. 1917 A, pages 216 et seq.

It seems however to be generally accepted as good law that two offices whose functions are inconsistent, are to be regarded as incompatible or that where the nature and duties of the two offices are such as to

render it improper from considerations of public policy for one incumbent to retain both, they are incompatible. We would go further, and hold that it is definitely improper from considerations of public policy to permit one to occupy two public offices where as the incumbent of one, he establishes the salary of the other, and passes upon his own account as incumbent of the other. Such practice clashes with our concept of good government and fair protection of the public. We cannot lend our approval to such conduct in important county offices where the incumbents have so much power and supervision over public funds. To hold otherwise creates fertile fields of peculation and improper distribution or expenditure of public funds. The very possibility of such abuse demands the remedy of prevention and courts of justice will never permit a public officer to illegally retain funds committed to his care, if there is a legal way to prevent it.

We have, after vigorous search, been unable to find a Pennsylvania case directly in point and neither counsel has offered one, but we think the Supreme Court has quite clearly stated the danger involved in the situation presented in Commonwealth ex rel. Ryan v. Haeseler, 161 Pa. 92, where, in passing on a question arising under the Act of February 17, 1859, P. L. 51, local as to Schuylkill County, which was enacted to secure a stricter accountability of certain public officers and which provided that no one person shall be eligible to hold more than one township, borough or school district office, with certain exceptions, the court, speaking of the incumbent of the offices of township treasurer and school director, said:

"The Treasurer, on the other hand, is, by virtue of his office, the custodian of all moneys belonging to the district. The directors authorize the drawing of orders upon him as treasurer, and they audit and settle his

accounts. If he is a member of the board of directors, he has a voice in the settlement of his account. He is the accountant, and a part of the body to which he accounts. . . ."

If we assume that the commissioners determined the salary one of their number should receive as deputy sheriff, paid it by order, received and settled the account, and if we further assume Commissioner Quick took part, in our opinion this could not legally be done. If the commissioners did not prescribe the salary as a board, Commissioner Quick lacked the authority to designate and pay his own salary; then it would still be illegal and the county should not be required to stand the expense.

We cannot escape the conclusion that through failure of action by the salary board this salary should not have been paid and that county commissioners while receiving salaries in that capacity should not act as deputies in other county offices where salaries are nominated, paid and audited by them.

We now come to the most serious question involved in the instant case. Is the sheriff, Amzi F. Altemose, such an officer as may take an appeal from the county auditors' report?

The Act of May 2, 1929, P. L. 1278, art. IV, sec. 379, provides that:

"An appeal may be taken from such report to the court of common pleas, either by the Commonwealth, the county, or the officer. Such appeal may also be taken by ten or more taxpayers in behalf of the county, in the manner and subject to the restriction provided by Article Twelve of this Act. . . ."

Reading this section in the light of those composing the balance of the act it becomes clear that the legislature contemplated the words "the Officer" to embrace only such officer as the auditors had found to be in-

debted to the county or one to whom the county was indebted.

Section 363 of the Act of July 28, 1941, P. L. 541, provides that the auditors shall make a report showing "a statement of the balance due from or to such county officers." Section 378 of the Act of 1929, supra, sets forth that the auditors' report when filed shall have the effect of a judgment against "real estate of the officer who shall thereby appear to be indebted either to the Commonwealth or to the county." Section 379 provides that "the officer" (not an officer or any officer) may take an appeal and further states "the officer" shall enter into a recognizance "in double the sum foûnd due by such report" conditioned to pay "such sum of money as shall appear on the final determination of the appeal to be due from him". Section 382, providing for an appeal to appellate courts, provides that where the decision is adverse "to the surcharged officer or officers" he or they shall pay all costs but where in favor of "such surcharged officer or officers" the county shall pay the costs. The particularizing effect of the word "the" as opposed to the indefinite force of "a" or "an" (see Worlds and Phrases, vol. 41, p. 461), as used in section 379 immediately implies that the legislature was referring to an officer defined in some other portion of the statute or some particular type of officer. A study of the other sections accretes this conclusion and we must reluctanty conclude that present appellant is not "the officer" contemplated.

It is apparent from even a cursory study of the act that it was never intended that any or all officers could appeal. This privilege was wisely limited to those surcharged; otherwise auditors' reports would be the subject of much unnecessary litigaton.

We may not increase or enlarge the plain statutory intendment by judicial liberality; see Mayo's Appeal,

315 Pa. 269; nor may we include in the statute a group not named. See Saint Paul Mercury Indemnity Company's Appeal, 325 Pa. 535, where the court said:

"It is a familiar maxim of statutory construction that where a provision of an act is expressly stated to apply to named persons or groups those persons and groups not named are excluded. See Sugar Notch Borough, 192 Pa. 349."

Further that these statutes are conclusive and must be followed with precision is most clearly set forth in the erudite opinion of Rhodes, P. J., in Neville Township Auditors' Report, 166 Pa. Superior Ct. 122.

We find some support for instant petitioners' claim that present appellant has no right to maintain this appeal in House v. Allegheny County, 153 Pa. Superior Ct. 396, 403, where, after discussing the status of a justice of the peace with reference to the term "County Officer", the court, speaking through Judge Reno, said:

"The requirement to appeal arises only when the controller has audited the books and accounts of a *county* officer and has found a balance against him."

Again in Horning's Case, 26 Pa. Superior Ct. 282, in a question arising under the Act of 1834, P. L. 537, which is quite similar to the act in question here, and provides, that from the time the report of auditors is filed any balance found to be due from an officer "shall have the effect of a judgment against the real estate of the officer who shall thereby appear to be indebted . . . to the county;" that "An appeal may be made from such report to the court of common pleas . . . either by the . . . county or the officer . . ."; we find some support for the same contention in the following excerpt from the opinion of the court on page 286. The court said:

"The appeal which the statute contemplates is an appeal from the report as a whole, so far as it relates

to the account of the particular officer and the balance found due to or from him and not an appeal from specific findings of the auditors upon particular items of the account. The taking of an appeal implies an assertion that the amount reported to ·be due to or from the officer is greater or less than the amount actually due, and although the appellant expressly asserts, when taking it, that this erroneous result was reached by the improper allowance or disallowance of certain items of the account, this will not preclude the other party from bringing other items under investigation, if that be necessary in order to determine what the true balance is."

Appellant in the instant case is not within the purview of the statute. The auditors have stated no balance due from or to him.

We are convinced from the appeal before us that the exceptions filed raised matters which should be investigated. County auditors are public servants created by statute to stand between the taxpayer and the reckless or careless expenditure of his funds. The office requires of its incumbent highest loyalty and meticulous care to see that public offices expend the people's money with absolute honesty and integrity. Likewise responsibility rests heavily on the courts to see to it that the legislative purpose in creating the check is not defeated through an astute search for technicalities to defeat it, or failure to permit a complete investigation of questioned items wherever possible under the act. Every public officer owes fidelity in the highest degree to those whom he is charged to protect and of county auditors as far back as 1863, the Supreme Court, in Commissioners of Lycoming v. The County of Lycoming, 46 Pa. 496, 498, said:

"There can be no doubt not only of the power but of the duty of the auditors to take notice of illegal dis-

bursements of the public funds, and to charge the officer who is guilty of misappropriation. It is the only protection the people have against the illegal acts of those who have charge of their pecuniary interests; and the greater complaint is that the auditors too frequently omit their duty in this respect."

Applying the above to the instant case, we may take judicial notice of the records of the courts of Monroe County showing the auditors' failure in the same report to surcharge an ex-county treasurer for a large amount of money unaccounted for. There is no one to represent the taxpayers. One of the county commissioners seeks to quash the present appeal and it would appear that unless this court may find some remedy to protect the pecuniary interests of the people of Monroe County, the sacrifice and endeavor of the outstandingly courageous officer who took the appeal will be for naught.

Appeals from auditors' reports have been permitted nunc pro tunc when there is concealment akin to fraud; see Unangsts' Appeal, 333 Pa. 489, and cases therein cited. In Com. ex rel Unangst v. Northampton County et al., 136 Pa. Superior Ct. 366, 369, the court said:

"Until the controller's reports for the years 1932, 1933, 1934 and 1935, insofar as they effect the Sheriff's accounts for those years, are opened and, on appeals nunc-pro-tunc being allowed, are found to be incorrect, and the sheriff is surcharged. . . ." The Superior Court, therefore, recognizing the vital necessity of guaranteeing the highest degree of honesty and efficiency in dealing with public funds, adopts the same thought with reference to the allowance of appeals nunc pro tunc.

This may not be condemned as such judicial "liberality" which was not permitted to correct a defective appellant's bond in Mayo's Appeal, 315 Pa. 269, 272. Its salutary adoption springs from the traditional

obligation of courts to maintain the dignity of good government and to insist on the integrity of its own and all other public officials. In the final essence the general welfare of the people and the protection of their interests imposes on the courts ever increasing responsibility to adopt equitable and just means to guarantee their security within the bounds of justice and the law.

Frequently in the process of administering justice, niceties of pleading and even long established technical principles must be overridden to make law the servant of justice. Petitioner argues forcefully in his brief that:

"Appellant's remedy as a taxpayer, and that is his sole legal position, if he wished to except to the auditors' report, was under section 1035 of the act providing for appeals from county auditors' reports by any 10 or more taxpayers. His present appeal amounts to an appeal by one taxpayer; as such it is deficient."

If there may be an appeal on behalf of the county by 10 or more taxpayers nunc pro tunc, we fail to find cogent reasons against the advisability of supplying the deficiency above referred to and, recognizing the obligation we owe to the people of Monroe County, we will take steps to supply it and permit the sheriff to amend the appeal by allowing the intervention nunc pro tunc of nine or more taxayers upon their furnishing the proper security and to amend the report by the inclusion of the proper affidavit that they believe injustice will be done such county unless they are permitted to defend, thereby guaranteeing a thorough investigation of the questioned allowances and meeting the demands of substantial justice.

### Order

And now, to wit, May 1, 1951, appellant is permitted to amend the appeal filed in the within action

by the addition of nine or more taxpayers of said county, upon the filing of proper affidavit and bonds, and the appeal will be amended accordingly and be proceeded upon in the same manner as though originally a taxpayers' appeal. Upon failure of appellant to comply with this condition within 10 days from this date, the rule to quash will be made absolute.