Commonwealth ex rel. Fox *v.* Swing, Appellant.

Argued March 15, 1962.   Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

242

*David F. Maxwell,* with him *Robert E. Porter, Harold D. Greenwell, David O. Maxwell,* and *Greenwell, Porter, Smaltz & Royal,* and *Obermayer, Rebmann, Maxwell & Hippel,* for appellant.

*Albert Blumberg,* with him *Read Rocap, Jr., Louis A. Bloom, Joseph W. deFuria, Paul R. Sand,* and *James A. Lynch,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 28, 1962:

Appellant, Albert H. Swing, in 1957, was elected to a four-year term as treasurer of Radnor Township, a first class township located in Delaware County. He assumed the duties of said office in January, 1958, and holds this position at the present time having been re-elected to a second four-year term in 1961. In 1959, appellant was elected a county commissioner of Delaware County, a third class county, for a term of four years. He assumed the duties of that office in January 1960.

Relator, Jacques H. Fox, District Attorney of Delaware County, filed a complaint in quo warranto against appellant in 1961, alleging that the offices of township treasurer and county commissioner which are held by appellant have functions, duties and responsibilities that are incompatible and that for this reason the positions are held illegally by appellant.

Appellant filed preliminary objections to the jurisdiction of the court below, contending that under Article XII, §2, of the Pennsylvania Constitution of 1874, the power to determine whether or not two public offices are incompatible is vested exclusively in

the legislature, and that the question of incompatibility cannot be decided by the courts. After argument, the preliminary objections were dismissed and appellant was given twenty days within which to file an answer. This appeal was taken.

Before deciding the merits of the legal question presented, we must dispose of appellee's motion to quash or dismiss the appeal. Appellee contends that the order of the court below overruling appellant's preliminary objections challenging the court's jurisdiction over the subject matter is interlocutory and not appealable. Suffice it to say that the Act of March 5, 1925, P.L. 23, 12 P.S. §672, was designed to permit an appeal in the present situation. As we stated in *Strank v. Mercy Hospital of Johnstown*, 383 Pa. 54, 57, 117 A. 2d 697 (1955), "Plaintiff has moved to quash the appeal on the ground that the court's decree was interlocutory and not a final decree from which an appeal may properly be taken. It is true, of course, that the appeal is not from a final decree, but the very purpose of the Act of 1925 was to permit such an appeal in order that the question of jurisdiction might be preliminarily determined. The motion to quash is overruled." Neither *Guzek v. Empire Wholesale Company*, 396 Pa. 78, 151 A. 2d 470 (1959), nor *Fairchild Engine and Airplane Corporation v. Bellanca Corporation*, 391 Pa. 177, 137 A. 2d 248 (1958), is applicable here.

Turning now to the main point at issue, the Constitution of Pennsylvania, Article XII, §2, provides: "No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The General Assembly may by law declare what offices are incompatible."

By virtue of this constitutional provision, the legislature of Pennsylvania has seen fit to declare many offices (other than federal and state offices mentioned in the first sentence of the constitutional enactment) incompatible. This is not so in reference to the offices here involved. They are not declared to be incompatible in any statute. Regardless, the lower court ruled that a court of common pleas has inherent authority to declare offices incompatible by the application of common law principles. It said: "While the Constitution provides that the legislature may declare what offices are incompatible this does not mean that the legislature alone has the authority and power to determine what offices are incompatible. In this Commonwealth public offices are incompatible either by reason of legislative enactment or under common law principles . . ."

This conclusion is not legally correct. If the courts enjoyed such inherent power at common law, it was completely abrogated by Article XII, §2 of the Pennsylvania Constitution. In fact, this Court has previously so ruled.

In *Commonwealth ex rel. Schermer v. Franek,* 311 Pa. 341, 166 A. 878 (1933), at 347, we said: *"Inasmuch as the Constitution has provided a method of declaring what offices are incompatible, thereby announcing the public policy of this State in regard thereto, the courts are not permitted to hold offices incompatible merely because the Legislature has failed to act, even though other states may have held such offices incompatible where the duties of one conflict with those of the other. The Legislature of this Commonwealth has determined in several instances certain offices to be incompatible, and it would be a transgression of the power of this court to hold the offices of Mayor and Justice of the Peace incompatible when the Legislature*

*has not seen fit to act in the matter.*"[1]  This language is clear and unambiguous.  See also, *Duffy v. Cooke,* 239 Pa. 427, 86 A. 1076 (1913).

It is argued that the above quoted statement of Justice KEPHART speaking for a unanimous court was not decisional and is mere dicta.  We cannot agree.  A study of the record in that case discloses that the issue of the incompatibility of the offices involved therein and the *court's power to determine that question in the absence of pertinent legislative expression* was squarely raised and at issue in the proceedings both in the lower court and in this Court.  On appeal, this Court adjudicated that issue even though it quashed the appeal on other grounds.  It was plainly an intricate embodiment of the court's determination.  This is not "dicta"!  Where a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of obiter dictum: *Manley v. Manley,* 193 Pa. Superior Ct. 252, 164 A. 2d 113 (1960).  Moreover, in the ensuing twenty-nine years, the ruling in this respect has been consistently followed and recognized as the law of Pennsylvania by the lower courts of the Commonwealth.  See, *Commonwealth ex rel. Storb v. Ressler,* 13 Pa. D. & C. 2d 175 (1957); *Gregory v. Johnson,* 88 Pa. D. & C. 250 (1954); *Commonwealth ex rel. Orban v. Berkey,* 75 Pa. D. & C. 353 (1950); and, *Kurtz v. Steinhart,* 60 Pa. D. & C. 345 (1947).

It is argued that the word "may" in the constitutional provision, supra, was used only in a permissive sense and this, in itself, indicates that the legislature does not possess the exclusive authority to determine what offices are incompatible.  As stated before, in *Commonwealth ex rel. Schermer v. Franek,* supra, it was decided to the contrary.  Further, similar language ("may be removed") in another section of the Constitution has been interpreted as meaning "exclu-

---

[1] Emphasis supplied.

246

sively." See, *Commonwealth ex rel. Kelley v. McBride,* 329 Pa. 41, 196 A. 80 (1938). Also, while the word "may" is generally interpreted to be used in a permissive sense, it does have the same connotation as the word "shall" in certain contexts and under certain circumstances. See, *Commonwealth of Pa., Dep't of Welfare v. Garland,* 393 Pa. 45, 142 A. 2d 14 (1958).

It is also argued that this Court has entertained jurisdiction in other instances wherein the incompatibility of public offices was involved. While this is true, the cases cited are inapposite. In not a single instance was the matter of common law incompatibility in issue. In some instances, the cases involved the constitutional prohibition contained in the first sentence of Article XII, §2 of the Constitution. In others, the facts involved misconduct in office by a public official. These cases are not controlling here.

Finally, we may agree that the two positions involved should not be held by the same individual and factually is against public policy. However, while this Court has the power under certain well defined circumstances to determine what is against public policy, this does not hold true in this instance because of the constitutional enactment. "Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are mere instruments of the law and can will nothing. . . . Judicial power is never exercised for the purpose of giving effect to the will of the Judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law." *Osborn v. President, Directors and Company of Bank of United States* (Chief Justice MARSHALL), 9 Wheaton 738, 866, 6 L. Ed. 204. The situation complained of may only be cured by the legislature. It is not for us to legislate or by interpretation to add to legislation matters which the legislature saw fit not to include. See, *Altieri v. Allentown*

*Officers' and Employees' Retirement Board,* 368 Pa. 176, 81 A. 2d 884 (1951).

Order reversed. The action is dismissed.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

These two offices are, in my judgment, undoubtedly incompatible and there are many similar situations which exist throughout Pennsylvania. The Courts can take jurisdiction, if at all,* only on the ground that a matter of public policy is involved. The law is thus expressed in *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A. 2d 686, where the Court said (page 360) : "The power of the court to determine what is against public policy, in a proper case, is well recognized. We said in Mamlin v. Genoe, 340 Pa. 320, 325: 'It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring. . . .' "

In other words, ordinarily, matters of public policy are matters for determination by the Legislature and not by the Courts, and this is especially so where it is almost impossible for a Court to draw a clear line**

---

* *Commonwealth ex rel. Schermer v. Franek,* 311 Pa. 341, 166 A. 878; Contra: Dictum in *Commonwealth ex rel. v. Snyder,* 294 Pa. 555, 144 A. 748; in *Commonwealth ex rel. Adams v. Holleran,* 350 Pa. 461, 39 A. 2d 612; in *Commonwealth ex rel. McCreary v. Major,* 343 Pa., supra.

** "That there is 'a virtual unanimity of opinion' among all reasonable men that it is against public policy for a public official to appoint himself to another public office within his gift is beyond all question. Courts, not only of this Commonwealth, but of every other jurisdiction known to us, have uniformly held that personal interest of a public officer creates disqualification.": *Commonwealth ex rel. McCreary v. Major,* 343 Pa., supra.

or to formulate a clear public policy in this field. For example, in numerous instances a member of the State Senate, and/or a member of the House of Representatives, holds two incompatible offices, yet, for undisclosed reasons or for political reasons, the Legislature has failed to pass appropriate legislation and the Courts have not assumed jurisdiction. I hope that this decision will awaken the Legislature to a realization of its responsibilities in this field.

I regretfully join in the majority opinion.

DISSENTING OPINION BY MR. JUSTICE COHEN:

By the majority's holding, it is now established that by Article XII, §2 of the Constitution "The General Assembly may by law declare what offices are incompatible" the courts of this Commonwealth are deprived of their common-law jurisdiction to determine questions of incompatibility. I cannot conceive that as the import of the constitutional provision. Surely, it was not the intention of the Constitutional Convention to deprive the courts of their common-law jurisdiction.

The problem of plural office holding is not new. In England as early as in the reign of Richard I (1189-1199), the sheriff was prohibited from holding the office of justice in his own county. Undoubtedly, incompatibility of certain offices began as a separation of power concept and then later became engrained in our common law as a matter of public policy. See Conklin, Plural Office Holding, 28 Oregon L.R. 332 (1949); 100 A.L.R. 1162 (1936), 13 L.R.A. 670 (1891), 1917A L.R.A. 216; and 5 L.R.A. 853 (1889). Here in Pennsylvania, in *Commonwealth v. Sheriff and Keeper of the Jail of Northumberland County*, 4 S. & R. 275 (1818), the Supreme Court observed "At the common

law, offices subordinate and interfering with each other have been considered incompatible. . . ."

The common law doctrine of incompatibility is best set forth in 3 McQuillin, Municipal Corporations, §12.67 (Supp. 1961) as follows: "The common law prohibits dual holding of incompatible offices. Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality, for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent."

Our problem, however, is not to determine whether under the common-law the courts had the power to determine offices incompatible. Rather, we must decide whether that common law power was abrogated by Article XII, §2, of the Pennsylvania Constitution of 1874 and placed solely in the hands of the general assembly.

In support of the conclusion that the courts have no jurisdiction over questions of incompatibility, the majority relies on *Commonwealth ex rel. Schermer v. Franck,* 311 Pa. 341, 166 Atl. 878 (1933), wherein we stated: "It is contended that the offices of Justice of the Peace and Mayor of a city are incompatible. Article XII, section 2 of the Constitution provides that the General Assembly may by law declare what offices are incompatible. We have been pointed to no statute which declares the office of Justice of the Peace and Mayor incompatible. Inasmuch as the Constitution has provided a method of declaring what offices are incompatible, thereby announcing the public policy of this State in regard thereto, the courts are not permitted to hold offices incompatible merely because the

Legislature has failed to act, even though other states may have held such offices incompatible where the duties of one conflict with those of the other. The Legislature of this Commonwealth has determined in several instances certain offices to be incompatible, and it would be a transgression of the power of this court to hold the offices of Mayor and Justice of the Peace incompatible when the Legislature has not seen fit to act in the matter."

Although this case has been cited frequently by several lower courts for the proposition that courts may not determine the incompatibility of offices, see, e.g., *Commonwealth ex rel. Storb v. Ressler,* 13 Pa. D. & C. 2d 175 (1957); *Gregory v. Johnson,* 88 Pa. D. & C. 250 (1954); *Commonwealth ex rel. Orban v. Berkey,* 75 Pa. D. & C. 353 (1950); and *Kurtz v. Steinhart,* 60 Pa. D. & C. 345 (1947), we do not regard it as binding precedent. The actual holding of the case was that a private citizen cannot invoke the issuance of a writ of quo warranto unless he has a special interest in the controversy greater than that of a mere member of the public. Since the relator did not have such an interest, the court quashed the appeal. The statement of Justice KEPHART regarding the incompatibility of offices was not decisional and was merely an additional observation in the form of dicta. The problem of incompatibility was not analyzed in the opinion, nor did the court discuss the history or the policy considerations underlying the doctrine. It is indicative that this court has not cited the *Schermer* decision in any subsequent case involving the question of incompatibility.

Rather, we are impressed with the fact that this court has on several occasions exercised jurisdiction over cases raising the question of incompatibility of public office. In *Commonwealth ex rel. v. Snyder,* 294 Pa. 555, 144 Atl. 748 (1929) we stated: "We have

said—and probably necessarily so because of article XII, section 2 of the state Constitution—that if a statute declares incompatibility, the penalty fixed by it, if any, will always be enforced: [citing cases]. If, however, as here, the incompatibility is not determined by a statute, *but arises solely by reason of the fact that the duties of the two offices are such that it would be against public policy to permit one person to hold both of them,* then the incumbent may elect which he will retain. . . ." The entire tenure of the opinion of the court makes it clear that a court *can* assume jurisdiction in an action of quo warranto where the alleged incompatibility of offices was based upon grounds of public policy rather than statutory declaration. Similarly, in *Commonwealth ex rel. Adams v. Holleran,* 350 Pa. 461, 39 A. 2d 612 (1944), we determined the incompatibility of two offices notwithstanding the fact that the legislature did not act. In the course of its opinion, the court stated that "In good public service a man cannot serve two masters or perform the duties of different offices," once again giving recognition to the longstanding common-law rule regarding incompatibility. See also *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A. 2d 686 (1941); *Packrall v. Lane,* 38 Wash. 193 (1958); *In re Monroe County Auditors' Report,* 84 Pa. D. & C. 278 (1951); *Reilly v. Ozzard,* 33 N.J. 529, 166 A. 2d 360 (1960); and *Kobylarz v. Mercer,* 130 N.J.L. 44, 31 A. 2d 208 (1943).

It is unquestioned that common-law rules and maxims are subject to modification by statute. However, a statute modifying a common-law rule will be enforced only to the extent of the modification intended. *Greene County v. Southern Surety Co.,* 292 Pa. 304, 141 Atl. 27 (1927). See Act of 1806, March 21, P. L. 558, 4 Sm. L. 326, §13, 46 P.S. §156. Similarly, there is no presumption that a statute was intended to change the common law. The change must

appear to have been meant, or it will be held not to have been made. *Central Lithograph Co. v. Eatmor Chocolate Company (No. 1)*, 316 Pa. 300, 175 Atl. 697 (1934). While these principles normally govern the construction of statutes, there is no reason why they cannot be applied in determining the effect of a constitutional provision on the prior common law.

It is significant that neither of the commentators on the Constitutional Convention of 1874 saw fit to comment regarding the effect of the provision in question upon the existing common-law doctrine of incompatibility and the right of the courts to determine questions of incompatibility. See Buckalew, An Examination of the Constitution of Pennsylvania (1883), White, Commentaries on the Constitution of Pennsylvania (1907). Similarly, the reported debates of the constitutional convention are devoid of any consideration of this issue. See Vol. VII, Debates of the Convention to Amend the Constitution of Pennsylvania (1873). Nor are there any cases reported questioning the jurisdiction of the courts under the Constitution of 1838, Art. VI, §8, which contained a provision similar in pertinent part to the current constitutional section.

We do not regard the word "may" in the second sentence of Art. XII, section 2, to be a sufficiently explicit indication on the part of the constitutional convention that the courts were to be stripped of their time-honored jurisdiction concerning matters of incompatibility and that the general assembly was to exercise sole and exclusive power in this regard. "May" is normally employed in a permissive sense, *Commonwealth of Pennsylvania, Department of Welfare v. Garland*, 393 Pa. 45, 142 A. 2d 14 (1958), and does not denote or connote either mandatory or exclusive power. Had the constitutional convention desired that the general assembly should have sole jurisdiction in this matter, it would have so provided in a much more articulate manner.

To hold to the contrary and prohibit the courts from considering questions of incompatibility would leave a void in the regulation of dual office holding in the large area of public activity concerning which the legislature has not seen fit to act, and would deprive the public of an important safeguard in guaranteeing the integrity of governmental offices and of those who occupy them.

I would affirm the order of the court below so that it might judicially determine whether the two offices held by the appellee were in fact incompatible and against public policy so that it would be improper to permit one person to hold both.

Mr. Justice O'BRIEN joins in this dissenting opinion.